Leon E. BARNUM, Petitioner,

v.

NATIONAL TRANSPORTATION
SAFETY BOARD, Respondent.

No. 77–1957.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 30, 1978.

Decided March 14, 1979.

Stuart Goldstein, Miami, Fla., for petitioner.

Susan M. Chalker, Atty., Dept. of Justice, Washington, D.C., with whom Barbara Allen Babcock, Asst. Atty. Gen., and Ronald R. Glancz, Atty., Dept. of Justice, Washington, D.C., were on the brief, for respondent.

Mark N. Mutterperl, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for respondent.

Before TAMM and ROBINSON, Circuit Judges, and JOHN H. PRATT,* United States District Judge for the District of Columbia.

Opinion for the court filed by TAMM, Circuit Judge.

TAMM, Circuit Judge:

Leon E. Barnum petitions this court for review of an order of the National Transportation Safety Board (Board)[1] suspend-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. See 49 U.S.C. § 1486 (1976). Under 49 U.S.C. § 1429 (1976), the Administrator of the Federal Aviation Administration (FAA) has authority to suspend an airman's certificate. Any airman whose certificate is suspended has a right to an administrative appeal to the National Transportation Safety Board (Board). See 49 U.S.C. § 1655(c)(1) (1976).

ing his commercial pilot certificate for 150 days. *See* Appendix (App.) at 49, 55. Petitioner does not contest the fact of his violations of flight rules, but he argues that the sanction imposed for the violations was an abuse of discretion and not in accordance with law. We affirm the Board's order.

## I

On February 26, 1976, the Administrator of the Federal Aviation Administration (FAA)[2] determined, after an investigation, that petitioner violated FAA flight rules during two "low flying" incidents. *Id.* at 2–3, 6–7; *see* 14 C.F.R. § 13.19 (1978).[3] The Administrator found that on June 1, 1975, petitioner operated a Grumman G–73 aircraft in the vicinity of Put-in-Bay, Ohio, at altitudes substantially less than 1,000 feet above congested areas and within 500 feet of persons and structures, in violation of 14 C.F.R. § 91.9 (1978)[4] and 14 C.F.R. § 91.-79(b) (1978).[5] On June 7, 1975, petitioner operated the same aircraft in the vicinity of Whitehouse, Ohio, at a distance of less than 500 feet from persons or property on the surface, in violation of 14 C.F.R. § 91.9[6] and 14 C.F.R. § 91.79(c) (1978).[7] The Administrator imposed a 90-day suspension for the June 1st incident and a 60-day suspension for the June 7th incident. The suspensions were later consolidated into a single 150-day suspension. *See* App. at 51 n. 5.

Petitioner appealed the Administrator's suspension order to the Board. *See* 49 U.S.C. § 1429 (1976); 49 C.F.R. § 821.30 (1977). After a hearing, an administrative law judge (ALJ) affirmed the Administrator's findings of violations and upheld the order of suspension. App. at 23–24.[8] Peti-

---

2. The Administrator acted through a Regional Counsel of FAA. *See* 14 C.F.R. § 13.19 (1978).

3. The relevant regulatory provisions in effect at the time of the administrative decisions have not been amended in any part significant to this appeal. Thus, we cite to the current *Code of Federal Regulations.*

4. 14 C.F.R. § 91.9 (1978) states: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."

5. 14 C.F.R. § 91.79(b) (1978) states:

    Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:

    .    .    .    .    .

    *Over congested areas.* Over any congested area of a city, town, or settlement, or over any open air assembly of persons, an altitude of 1,000 feet above the highest obstacle within a horizontal radius of 2,000 feet of the aircraft.

6. *See* note 4 *supra.*

7. 14 C.F.R. § 91.79(c) (1978) states:

    Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:

    .    .    .    .    .

    *Over other than congested areas.* An altitude of 500 feet above the surface except over open water or sparsely populated areas. In that case, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.

8. The administrative law judge's (ALJ) findings were more detailed than those of the Administrator. The ALJ found:

    .    .    .    That during the June 1st flight, Respondent operated the aircraft at an altitude much less than 1,000 feet above crowds near the Perry Memorial on South Bass Island, and within 500 feet of the Memorial itself.

    .    .    .    The crowds around the monument constituted an open air assembly of persons.

    .    .    .    That such flight over or in the vicinity of South Bass Island was not necessary for takeoff or landing.

    .    .    .    That Respondent's flight over or in the vicinity of the Perry Memorial on South Bass Island constituted a violation of Section 91.79(b).

    .    .    .    That such flight was reckless and presented a serious hazard to those on the observation level of the monument and those on the ground in violation of Section 91.9.

    .    .    .    .    .

    .    .    .    That during the June 7th flight, Respondent made one low pass over Whitehouse, Ohio, at an altitude substantially less than 500 feet above the surface and within 500 feet of the Leatherman residence.

    .    .    .    That such operation of the aircraft over Whitehouse, Ohio, was not necessary for takeoff or landing.

    .    .    .    That such operation of the aircraft over or in the vicinity of Whitehouse, Ohio, constituted a violation of Section 91.-79(c).

tioner then sought full Board review. *See* 49 C.F.R. § 821.47 (1977).

Before the Board, petitioner contended that the suspension for 150 days was not in accord with Board policy and precedent and was too severe in the circumstances of his case. He argued that the usual sanction for low flying is a 30-day suspension and that the suspension imposed would work an undue financial hardship on him and his company. *App.* at 32–34. Petitioner asked that the suspension be eliminated, or, alternatively, that two 30-day concurrent suspensions be imposed. *Id.* at 35.

■ The Board affirmed the 150-day suspension stating:

> Although, as respondent stresses in his brief, a 30-day suspension has been imposed in a substantial number of cases involving low flight, that figure represents the lower end of the range of sanctions generally imposed in such cases. In our judgment, the pertinent factors pertaining to the June 1 incident—namely, the proximity of the flight to the tower, the fact that the flight was over an open assembly of persons, and the consequent reckless nature of the operation which presented a serious hazard—fully warrant a 90-day suspension.
>
> While the second incident presents a somewhat closer question, in that it comes closer to the standard case involving low flight resulting in a 30-day suspension, we nevertheless conclude that the 60-day suspension is justifiable, considering in particular the deliberate or "buzzing" nature of the flight and the extremely low altitude (60 to 100 feet, described by one witness) reached during the flight over a heavily treed area of scattered residences.

> . . . That such flight was careless and presented a serious hazard to those on the ground in violation of Section 91.9.
> Appendix (App.) at 23–24.

9. Petitioner also contends that the ALJ's reference to the "reckless" nature of the June 1st flight, and the Board's adoption of this finding, require reversal because the Administrator of FAA made a finding only of "careless" flight under 14 C.F.R. § 91.9. *See* Brief for Petitioner

*Id.* at 54. The Board rejected petitioner's argument that the sanction would cause undue financial hardship. *Id.* at 55. In this court, petitioner contends that the Board failed to follow its prior decisions in similar cases.[9]

## II

Our review of the sanction imposed by the Administrator and upheld by the Board is limited by statute and Supreme Court precedent. Under section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1976), the relevant inquiry for this court is whether the sanction imposed is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* Department of Transportation Act, § 6(h), 49 U.S.C. § 1655(h) (1976). The Supreme Court has specifically stated that "the . . . choice of [administrative] sanction [is] not to be overturned unless the Court of Appeals might find it 'unwarranted in law or . . . without justification in fact . . . .' " *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973) (quoting *American Power Co. v. SEC,* 329 U.S. 90, 112, 67 S.Ct. 133, 91 L.Ed. 103 (1946)).

Petitioner contends we should reverse the Board's decision because the 150-day suspension fails to conform to prior Board decisions in similar cases. As the Board was careful to explain, petitioner's violations of the safety regulations were more egregious than those usually encountered. Moreover, the Supreme Court has stated that "[t]he employment of a sanction within the authority of an administrative agency is . . . not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases." *Id.* 411 U.S. at

at 32–34; notes 4, 8, *supra*; App. at 2 (Administrator's decision). We agree with the Board that consideration of such alleged error by this court is foreclosed by petitioner's failure to urge his objection before the Board. 49 U.S.C. § 1486(e) (1976); *see Air Line Pilots Ass'n Int'l v. CAB,* 163 U.S.App.D.C. 451, 502 F.2d 453, 457 (1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1393, 43 L.Ed.2d 652 (1975).

187, 93 S.Ct. at 1459. In making this pronouncement, the Court rejected the suggestion that the absence of " 'uniformity of sanctions for similar violations' " rendered a sanction " 'unwarranted in law.' " *Id.* at 186, 93 S.Ct. at 1458.

■ Although "mere unevenness in the application of the sanction does not render its application in a particular case 'unwarranted in law,' " *id.* at 188, 93 S.Ct. at 1459, the sanction imposed in a given case must bear a reasonable relationship to the goal that the governing legislation was intended to accomplish. *See Livestock Marketers, Inc. v. United States,* 558 F.2d 748, 749 (5th Cir. 1977) (per curiam), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978); *Nowicki v. United States,* 536 F.2d 1171, 1178 (7th Cir. 1976), *cert. denied,* 429 U.S. 1092, 97 S.Ct. 1103, 51 L.Ed.2d 537 (1977). The preeminent purpose of the statute authorizing the suspension of certificates, section 609 of the Civil Aeronautics Act of 1938, as amended, 49 U.S.C. § 1429 (1976),[10] is air safety. *See Wilson v. CAB,* 100 U.S.App.D.C. 325, 326, 244 F.2d 773, 774, *cert. denied,* 355 U.S. 870, 78 S.Ct. 119, 2 L.Ed.2d 75 (1957); *see also Haines v. Department of Transportation,* 145 U.S. App.D.C. 411, 414, 449 F.2d 1073, 1076 (1971). Section 601(b) of the Civil Aeronautics Act of 1938, as amended, 49 U.S.C. § 1421(b) (1976), provides that the Administrator of FAA shall act "in such manner as will best tend to reduce or eliminate the possibility of, or recurrence of, accidents in air transportation." Toward this end, the Administrator has great discretion in carrying out the provisions of the Civil Aeronautics Act of 1938, as amended. *Wilson v. CAB,* 100 U.S.App.D.C. at 326, 244 F.2d at 774.[11]

■ In this case, the ALJ concluded that on June 1st, petitioner's flight around the Perry Monument at Put-in-Bay, Ohio, needlessly and recklessly threatened persons on the observation deck of the memorial, persons on the monument grounds, and persons aboard the aircraft. On June 7th, petitioner's low altitude flight endangered lives and property of his neighbors and his family.[12] The ALJ noted that petitioner had no prior record and used his certificate in connection with his livelihood. However, he concluded that petitioner's reckless and careless actions justified the 150-day suspension, particularly in view of the fact that petitioner was an experienced pilot. App. at 21–22.

On review of the ALJ's decision, the Board agreed with the ALJ's assessment of the circumstances leading to the sanction, and reemphasized the relevant considerations, including the reckless nature of the June 1st incident and the deliberate nature of the flight on June 7th. *See* text *supra* at —— of 194 U.S.App.D.C., at 871 of 595 F.2d; App. at 52–55. The Board ruled that air safety and the public interest required affirmation of the 150-day suspension.

In *Administrator v. Whitaker,* 1 N.Tran. S.Dec. 1982, 1987–88 (1972),[13] the Board

---

10. 49 U.S.C. § 1429(a) (1976) provides, in part:

The Secretary of Transportation may . . . reexamine any civil airman. If, as a result of any such . . . reexamination, or if, as a result of any other investigation made by the Secretary of Transportation, he determines that safety in air commerce or air transportation and the public interest requires, the Secretary of Transportation may issue an order amending, modifying, suspending, or revoking, in whole or in part, any type certificate, production certificate, airworthiness certificate, airman certificate, air carrier operating certificate, air navigation facility certificate (including airport operating certificate), or air agency certificate.

11. *See also Fuhrman v. Dow,* 540 F.2d 396, 398 (8th Cir. 1976); *Nadiak v. CAB,* 305 F.2d 588,

593 (5th Cir. 1962), *cert. denied,* 372 U.S. 913, 83 S.Ct. 729, 9 L.Ed.2d 722 (1963).

12. Petitioner had flown over his home community for the purpose of notifying his family of his return. App. at 21.

13. In response to the Board's request, the Administrator of FAA stated that the following factors are considered in safety enforcement proceedings:

1. Nature of the violations;
2. Whether the violation was inadvertent or deliberate;
3. The certificate holder's level of experience and responsibility;
4. Attitude of the violator;
5. The hazard to safety of others which should have been foreseen;

stated that the primary factors considered in imposing a sanction were the nature and seriousness of the violations, and the background, role, and attitude of the airman. The ALJ's initial decision and the Board's final decision indicate that these factors were taken into account in imposing the 150-day suspension.

We conclude that the sanction imposed by the Board is reasonably related to the goal of air safety, and the decision of the Board is

*Affirmed.*

6. Action taken by employer or other government authority;
7. Length of time which has elapsed since violation;
8. The certificate holder's use of the certificate;
9. The need for special deterrent action in a particular regulatory area, or segment of industry; and
10. Presence of any factors involving national interest, such as the use of aircraft for criminal purposes.

*Administrator v. Whitaker,* 1 N.Trans.S.Dec. 1982, 1988 (1972). The Board "generally concur[red]" that the listed factors are the "basic criteria." *Id.* The Board did not indicate that all ten factors would be relevant in every case; nor did it commit itself to explicit consideration of each factor in all cases coming before it. In its opinion in *Whitaker,* the Board did not refer to all ten factors in upholding a suspension of an airman's certificate. *See id.* at 1989.