John Sheppard BOND, Petitioner,

v.

NATIONAL TRANSPORTATION SAFETY BOARD, Respondent.

No. 78–1384.

United States Court of Appeals,
Tenth Circuit.

Submitted Sept. 14, 1979.

Decided Nov. 1, 1979.

J. Scott Hamilton, Denver, Colo., for petitioner.

Barbara Allen Babcock, Asst. Atty. Gen., and Ronald R. Glancz and Allen H. Sachsel, Civil Division, Appellate Staff, Dept. of Justice, Washington, D. C., for respondent.

Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The petitioner, John Sheppard Bond, has appealed from a final order of the National Transportation Safety Board. This order directed an amendment of Bond's private pilot certificate so as to limit his rotorcraft category and gyroplane class rating to solo flight only. The main issue in the case is somewhat technical. It is whether the Board erred in its interpretation of 14 C.F.R. § 61.45(e), which is the FAA regulation which prescribes the aircraft to be used in flight tests. There is a second question also, and that is proper venue.

We first consider the venue question. Counsel for the Board has raised this issue for the first time in his brief to this court. 49 U.S.C. § 1486(b) provides that a petition for review of a Federal Aviation Administration or Board order "shall be

filed in the court for the circuit wherein the petitioner resides . . . or in the United States Court of Appeals for the District of Columbia." Bond resides in Oregon and therefore the venue was properly the United States Court of Appeals for the Ninth Circuit or the United States Court of Appeals for the District of Columbia. If petitioner had raised the question in a timely manner, this court would have had the authority to transfer the case to the Ninth Circuit or the District of Columbia Circuit. *See Panhandle Eastern Pipe Line Co. v. FPC*, 337 F.2d 249 (10th Cir. 1964). As it is, we are of the opinion that the venue issue was waived and that the government is subject to the waiver rule. *See Panhandle Eastern Pipe Line Co. v. FPC*, 324 U.S. 635, 65 S.Ct. 821, 89 L.Ed. 1241 (1945); *Hoiness v. United States*, 335 U.S. 297, 69 S.Ct. 70, 93 L.Ed. 16 (1948).

We are unwilling to grant a change of venue at this stage of the proceedings because it is not in the interest of efficient administration to do so. The merits of the case have been presented to this court by both sides and having taken hold of the case, it would be inefficient to relinquish it.

The FAA regulation which is to be construed is found at 14 C.F.R. § 61.45. Subsection (e) concerns the use of aircraft with single controls for taking certain flight tests. The cited regulation requires generally that an applicant for a pilot certificate or rating shall provide an appropriate aircraft with two pilot seats for the required flight test. An exception to the two-seat requirement is made in limited situations. A single control aircraft can be used for flight tests in accordance with 14 C.F.R. § 61.45(e). This regulation is as follows:

> Aircraft with single controls. At the discretion of the examiner, an aircraft furnished under paragraph (a) of this section for a flight test may, in the cases listed herein, have a single set of controls. In such case, the examiner determines the competence of the applicant by observation from the ground or from another aircraft.

(1) A flight test for addition of a class or type rating, not involving demonstration of instrument skills, to a private or commercial pilot certificate.

(2) A flight test in a single-place gyroplane for—

(i) A private pilot certificate with a rotorcraft category rating and gyroplane class rating, in which case the certificate bears the limitation "rotorcraft single-place gyroplane only"; or

(ii) Addition of a rotorcraft category rating and gyroplane class rating to a pilot certificate, in which case a certificate higher than a private pilot certificate bears the limitation "rotorcraft single-place gyroplane, private pilot privileges, only."

The limitations prescribed by this subparagraph may be removed if the holder of the certificate passes the appropriate flight test in a gyroplane with two pilot stations or otherwise passes the appropriate flight test for a rotorcraft category rating.

The licensing scheme for pilots consists of three levels. First, each pilot must be issued a certificate. There are four types of certificates: student pilot, private pilot, commercial pilot and airline transport pilot. When a certificate is issued it must contain at least one category rating. The categories include airplane, rotorcraft and glider. These categories are further divided into classes. The rotorcraft class ratings include helicopter and gyroplane. Category and class ratings may be added to existing pilot certificates by meeting the requirements for issuance of a certificate appropriate to the privileges for which the rating is sought and passing an appropriate flight test.

In this case Bond was the holder of a private pilot certificate with a rating for single engine land airplanes. On October 7, 1975, he went to California and took a flight test in a single place gyroplane in an attempt to add the rotorcraft category and gyroplane class ratings to his private pilot certificate. He was issued a certificate with the gyroplane rating limited to solo operations, single place only. In July 1976,

he took another flight test in the same single place aircraft in Rockford, Illinois, in an effort to remove the solo limitation. A FAA official issued a temporary certificate which did not include any limitation for operation of gyroplanes. He was later sent a permanent certificate without the limitation.

When this action was started petitioner was in possession of a certificate issued in September 1976, with a rotorcraft-gyroplane rating without the solo-only limitation. The FAA issued an order on July 13, 1977, acting pursuant to § 609 of the Federal Aviation Act, which revoked the unlimited rotorcraft-gyroplane rating on the certificate. This order was based on the FAA interpretation of 14 C.F.R. § 61.45(e), that an unlimited rotorcraft-gyroplane rating could be obtained only if a flight test was taken in a gyroplane with two stations. Bond had never taken a flight test in such an aircraft.

The order was appealed to the National Transportation Safety Board. Bond's position was that the flight test taken in the single-station gyroplane qualified him for the unlimited gyroplane rating under § 61.-45(e)(2)(ii). The case was heard before an administrative law judge in Portland, Oregon. The issue involved interpretation of § 61.45(e). The question was whether the regulation could be read so as to allow the issuance of a certificate with an unlimited gyroplane rating to a pilot who has not taken a flight test in a gyroplane with two pilot stations. The administrative law judge held that the regulation did not allow this. Under the administrative law judge's interpretation Bond was governed by subsection (2)(i), and since both his flight tests were taken in a single-place gyroplane, he qualified only for a certificate containing the limitation for solo-only operations. It was recognized that Bond held a private pilot certificate for single engine land airplanes when he took the flight test to add the rotorcraft-gyroplane ratings. Nevertheless, the administrative law judge's position was that, in effect, Bond was obtaining a new private pilot certificate with the additional category and class ratings, and so

fell squarely within (2)(i). His application was for a private pilot certificate with a particular type of category and class rating in the same manner that a person who had not previously held any type of private pilot certificate would apply in the first instance for a private pilot certificate with rotorcraft category and gyroplane class rating.

Subsection (2)(ii), which is quoted above, was interpreted to apply only to persons holding a certificate higher than a private pilot certificate, that is, a commercial or airline transport pilot certificate. If such a person takes a flight test in a single-place gyroplane, the certificate issued preserves the commercial or airline transport privileges, but limits rotorcraft operation to private pilot privileges for single place gyroplanes. Thus, the subsection places a dual limitation on the certificate.

To remove the limitations the last paragraph of subsection (e) must be followed. The administrative law judge said that it required a flight test in a gyroplane with two stations or that the pilot "otherwise [pass] the appropriate flight test for a rotorcraft category rating." This second clause was interpreted as referring to the required flight test for helicopters, which are the other class of aircraft which fall within the rotorcraft category.

The administrative law judge felt that the above interpretation was necessary in order to avoid the logical inconsistency of placing the solo-only limitation on the commercial or airline transport certificates of pilots who took the flight test in a single-place gyroplane, but not placing the limitation on the certificate of a private pilot who took the test in the same type of aircraft. It was concluded that 14 C.F.R. § 61.-45(e)(2)(i) required application of the solo-only limitation to all individuals with a student pilot or private pilot certificate who take the flight test in a single seat craft. Subsection (e)(2)(ii) was held to apply and impose a dual limitation whenever the gyroplane rating was added to a certificate higher than a private certificate. In both cases the limitation or limitations remain

until the applicant demonstrates flight proficiency in a dual-place gyroplane.

This interpretation was made in the interest of carrying out the intent of the entire regulation. The administrative law judge stated:

I don't believe that it is ever contemplated in the regulations that an individual will be able to operate carrying passengers without ever having demonstrated to the Administrator an ability to operate that particular type of equipment. That certainly does not promulgate safety in air commerce or air transportation.

Bond had never demonstrated proficiency in a dual place gyroplane and hence his certificate was ordered amended to add the single place limitation to his rotorcraft-gyroplane rating.

Bond's contention on review to the National Transportation Safety Board was that 14 C.F.R. § 61.45(e) was misconstrued. However, the Board affirmed the order and construed the regulation as requiring the solo-only limitation to a rating whenever the flight test was taken in a single-place gyroplane, regardless of the level of certificate held by the applicant. The intent of the regulation was stated to be as follows:

1. Dual-controlled aircraft should be used in flight tests.

2. Whenever a single-place gyroplane is used, the recipient of the rating is restricted to solo operations. The reason for this restriction is obvious—pilots should not be allowed to carry passengers in multi-place gyroplanes without demonstrating their competence in such aircraft by means of a flight test conducted with the examiner on board.

3. In order to remove the solo limitation, a flight test must be taken with an on-board check pilot, as prescribed by the last sentence in subsection (e).

Bond, in his appeal to this court, contends that the construction of 14 C.F.R. § 61.45(e) should allow removal of the solo-only limitation based on his flight tests in a single-place gyroplane. He argues that subparagraph (e)(2)(i) applies only to a person who is taking a flight test to obtain both a private pilot certificate and a rotorcraft category rating and a gyroplane class rating in the same flight test. Thus, he argues that subsection (i) does not apply to his situation as he already held a private pilot certificate at the time that he applied for the gyroplane rating.

Subsection (ii) is said to apply whenever the applicant already holds a pilot certificate and takes a flight test for the addition of a rotorcraft category rating and gyroplane class rating to the existing certificate. Further, subparagraph (ii) justifies placing the limitation "rotorcraft single place gyroplane, private pilot privileges, only" only on certificates higher than the private pilot certificate, such as on commercial or airline transport pilot certificates. Such an interpretation leads to the conclusion that 14 C.F.R. § 61.45(e) does not require the placing of any limitation on the rotorcraft category rating and gyroplane class rating of an applicant already in possession of a private pilot certificate who takes the flight test in a single control gyroplane. It is argued that such an interpretation is consistent with the regulatory policy of holding commercial and airline transport pilots to a higher standard of care and training than private pilots.

An alternative construction of subsection (e)(2) was presented by the administrator in his brief filed with the National Transportation Safety Board. This interpretation is based on the premise that subsection (e) provides exceptions to the general rule that flight tests are to be taken in aircraft with dual controls. The exceptions allow use of single control gyroplanes for flight tests at the discretion of the tester, but adds restrictions to the rating received. Subparagraph (e)(2)(i) allows the use of a single-place gyroplane for the initial issuance of a private pilot certificate with rotorcraft category and gyroplane class ratings, but restricts the holder of a certificate issued in that manner to "rotorcraft single place gyroplane only." Where the rotorcraft category, gyroplane class rating is added to a previously issued pilot certificate, subsection (e)(2)(ii) applies and a similar restric-

tion is imposed, except that in the case of holders of commercial and airline transport pilot certificates, a further restriction is added limiting such holders to the exercise of private pilot privileges in gyroplanes. The rationale for this limitation is that the FAA does not wish to allow the use of gyroplanes for commercial purposes based upon a flight test viewed by the tester only from the ground. The purpose of (e)(2)(ii) is to place the dual restriction on certificates higher than a private pilot certificate, and not to exclude holders of private pilot certificates from any limitations.

The weakness of this interpretation is that subsection (e)(2)(ii) makes no direct reference to limitations on private pilot certificate holders. This omission admittedly makes the regulation somewhat unclear. However, the absence of a specific reference to a private pilot is not conclusive as to an intent to exclude private pilots from any limitations. Both the administrative law judge and the Board rejected the argument that the regulatory intent for excluding private pilots was to hold commercial and airline transport pilots to a higher standard of training than private pilots. The intent of the regulation was found to be to apply the solo-only limitation and preclude flight with passengers until the pilot had demonstrated flight proficiency in a dual place aircraft. This interpretation is entitled to receive weight. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

Taking into account the FAA interpretation of the provision and the air safety objectives which the regulations seek to achieve, the proper interpretation of 14 C.F.R. § 61.45(e) requires that a solo-only or single-place limitation be placed on rotorcraft gyroplane ratings whenever the flight test for such ratings is taken in a single-place gyroplane. This limitation can be removed by taking another flight in a dual control aircraft. Bond, however, never passed a flight test in a dual control aircraft. Hence, the order amending his pilot certificate to add the limitation "gyroplane limited to solo operations" should be affirmed.

IT IS SO ORDERED.