Amelia C. REID, Petitioner,

v.

Donald D. ENGEN, Administrator, Federal Aviation Administration; Federal Aviation Administration; National Transportation Safety Board; U.S.A., Respondents.

No. 83–7958.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 1985.

Decided July 19, 1985.

Jay C. White, Redwood City, Cal., for petitioner.

Mardi R. Thompson, Atty., F.A.A., Washington, D.C., for respondents.

Before WALLACE and POOLE, Circuit Judges, and BREWSTER,* District Judge.

* Honorable Rudi M. Brewster, United States District Judge, Southern District of California, sitting by designation.

**1460**

WALLACE, Circuit Judge:

Reid appeals from the National Transportation Safety Board's (NTSB) order affirming the suspension of her pilot certificate for 120 days. We have jurisdiction over her appeal under 49 U.S.C. § 1486(a), and we affirm.

I

Reid is the holder of airline transport pilot (ATP) and flight instructor certificates. She owns a Taylorcraft F–19 airplane which she rents to other pilots. The aircraft is a "taildragger," with a two wheel main landing gear and a small tailwheel. On February 3, 1982, a rental pilot groundlooped the Taylorcraft at a small airstrip close to Reid's home field. Upon hearing of the accident, Reid flew to the nearby airport with her son and a certificated mechanic, and brought a replacement landing gear with her. The aircraft had sustained structural damage to a longeron, a steel tube running along the fuselage, causing the tail assembly to be slightly but visibly twisted off center. Reid replaced the damaged main landing gear and removed the damaged tailwheel, leaving only a tail skid. Reid then flew the aircraft back to her home field. While attempting to land on the turf adjacent to the runway to avoid further damage, she also groundlooped the aircraft. Before leaving the site of the original mishap, Reid did not seek any other opinions about the airworthiness of the aircraft.

On February 5, a Federal Aviation Agency (FAA) inspector observed and photographed the aircraft. While inspecting the maintenance records, he noticed the omission of some required information from the January maintenance. In addition, the installation of the temporary landing gear was not recorded in the logs.

On March 23, Reid received notification by letter that her flight instructor certificate was suspended. On April 20, the FAA Administrator ordered a 180–day suspension of her ATP certificate. The suspension of her ATP certificate was based on violations of 14 C.F.R. §§ 91.9, 91.29(a), 91.165 (1985). Reid appealed to the NTSB.

An NTSB Administrative Law Judge (ALJ) held a hearing on October 1, at which the FAA presented witnesses and offered exhibits. Reid cross-examined the witnesses, testified, and offered exhibits. The ALJ concluded that Reid had violated section 91.29(a) (flying an unairworthy aircraft) and section 91.165 (failing to keep proper records), but had not violated section 91.9 (operating the aircraft to endanger other lives or property). The ALJ commensurately reduced the suspension period to 120 days. Reid appealed to the NTSB, and both parties filed briefs. The NTSB affirmed the ALJ.

II

[1] Although Reid raises several issues on this appeal challenging the Administrator's authority on statutory and constitutional grounds, she failed to raise any of them in the NTSB proceeding, and does not challenge the findings of the NTSB in this appeal. As a general rule, if a petitioner fails to raise an issue before an administrative tribunal, it cannot be raised on appeal from that tribunal. *See, e.g., United States v. L.A. Tucker Truck Lines,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952) (*Tucker*); *Unemployment Compensation Commission of Alaska v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946). This axiom of administrative law is embodied in many legislative schemes, and the language of section 1006(e) of the Federal Aviation Act of 1958 (Act), which controls this case, is typical: "No objection to an order of the Board or Secretary of Transportation shall be considered by the court unless such objection shall have been urged before the Board or Secretary of Transportation or, if it was not so urged, unless there were reasonable grounds for failure to do so." 49 U.S.C. § 1486(e). Thus, we are confronted with the threshold issue of whether we may decide these issues even though Reid failed to exhaust her administrative remedies.

A.

■ Like virtually all general principles, however, the foregoing principle also has

its exceptions. We may decide an issue not raised in an agency action if the agency lacked either the power or the jurisdiction to decide it. *See Tucker*, 344 U.S. at 38, 73 S.Ct. at 69; *Reese Sales Co. v. Hardin*, 458 F.2d 183, 187 (9th Cir.1972). This situation is typified by challenges to the constitutionality of a statute, *see, e.g., Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975) (*Salfi* ), or challenges to the constitutionality of a regulation promulgated by the agency. *See, e.g., Motor & Equipment Manufacturer's Association v. EPA*, 627 F.2d 1095, 1114–15 (D.C.Cir.1979), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2917, 64 L.Ed.2d 808 (1980); *Watson v. NTSB*, 513 F.2d 1081, 1082 (9th Cir.1975) (per curiam).

■ Reid raises several constitutional issues which implicate the power and jurisdiction of the NTSB. First, she argues that the suspension process unconstitutionally infringed her right to pursue her chosen profession. Second, she contends that the "public interest" standard of 49 U.S.C. § 1429(a) is too indefinite to satisfy due process. Third, she asserts that the Administrator's ex parte sanction procedure violated her procedural due process rights. These arguments present general challenges to the constitutionality of section 1429(a) and its enforcement scheme, which are beyond the jurisdiction of the NTSB to determine. *See Salfi*, 422 U.S. at 765, 95 S.Ct. at 2466. As the Supreme Court has explained, "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions.... [W]hen constitutional questions are in issue, the availability of judicial review is presumed." *Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). Thus, we conclude that we must address the merits of proper constitutional arguments although they were not raised in the administrative proceeding.

■ Notwithstanding this principle, a petitioner cannot obtain review of procedural errors in the administrative process that were not raised before the agency merely by alleging that every such error violates due process. "Due process" is not a talismanic term which guarantees review in this court of procedural errors correctable by the administrative tribunal. *See Sears, Roebuck & Co. v. FTC*, 676 F.2d 385, 398 (9th Cir.1982) ("Exhaustion rules ... avoid the application of judicial resources to matters which might be resolvable at the agency level."); *First-Citizens Bank & Trust Co. v. Camp*, 409 F.2d 1086, 1088–89 (4th Cir.1969) ("ordinarily, a litigant is not entitled to remain mute and await the outcome of an agency's decision [only to] attack it on the ground of asserted procedural defects not called to the agency's attention"). Reid's first two constitutional claims are not within this category, and thus may be reviewed here. Part of Reid's third constitutional argument, however, falls into this category.

In attacking the Administrator's ex parte sanction procedure, Reid asserts that her due process rights were violated because the 120–day suspension bears no reasonable relationship to her underlying offenses. This, however, is essentially an assertion that the sanction was excessive, an argument that could have been made to the NTSB and if accepted, corrected by the NTSB. The NTSB has the power to review decisions that are contrary to law, constitute prejudicial procedural error, or constitute facially deficient staff action. *See* 14 C.F.R. § 385.51(b) (1985). The correctability of this error is evident because the ALJ already had reduced Reid's initial suspension period from 180 to 120 days. Therefore, we will treat this argument as one over which the NTSB had power and jurisdiction.

### B.

■ We may still decide issues over which an agency has power and jurisdiction when "exceptional circumstances" warrant such review, notwithstanding the petitioner's failure to present them to the agency. *See, e.g., Page v. Donovan*, 727 F.2d 866, 868 (9th Cir.1984); *Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs*, 644 F.2d 827, 832

(9th Cir.1981); *Getty Oil Co. v. Andrus*, 607 F.2d 253, 256 (9th Cir.1979). *See also Board of Public Instruction v. Finch*, 414 F.2d 1068, 1073 (5th Cir.1979) (discussing possible factors for defining exceptional circumstances). However, our discretion to undertake such an inquiry is absent when a statute requires exhaustion of claims before the agency. When a statute requires exhaustion, a petitioner's failure to do so deprives this court of jurisdiction. *See Montgomery v. Rumsfeld*, 572 F.2d 250, 252–53 (9th Cir.1978). Only if there is no statutory exhaustion requirement may we exercise our discretion to apply judicially-developed exhaustion rules. *See id.* at 253–54.

▮ The statute at issue in this case provides that all issues must be raised before the NTSB or Administrator before this court may consider them, "unless there were reasonable grounds for failure to do so." 49 U.S.C. § 1486(e). Thus, while the statute commands exhaustion, it also vests this court with the discretion to review unraised claims in proper circumstances. *See, e.g., Lloyd E. Lockrem, Inc. v. United States*, 609 F.2d 940, 942–43 (9th Cir.1979) (applying the "exceptional circumstances" test despite an exhaustion statute because the "exceptional circumstances" exception was incorporated into it). Therefore, Reid's failure to assert issues over which the NTSB has power and jurisdiction does not deprive this court of jurisdiction if, but only if, she meets the statutory exception by showing that her failure to do so was based on "reasonable grounds." *See id.* at 943.

▮ Reid raises two statutory arguments: (1) the Administrator had no legislative authority to suspend her license for deterrent purposes, and (2) the Administrator's ex parte sanction process violated both the Act and the Administrative Procedure Act, 5 U.S.C. §§ 500–576. These arguments present nonconstitutional questions of statutory interpretation and applicability. These are issues over which administrative agencies clearly have power and jurisdiction, since we are obliged to defer to their construction of statutes, particularly when the agency is charged with

their administration. *See, e.g., Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965); *Hawaiian Electric Co. v. EPA*, 723 F.2d 1440, 1447 (9th Cir.1984). Reid presents us with no reasons why she could not have raised these questions of statutory interpretation before the NTSB; she attempted to justify only her failure to raise her constitutional claims. Thus, we conclude that Reid has not raised "reasonable grounds" for her failure to raise these issues within the meaning of the statute, and we will follow the general rule and decline to decide them. *See, e.g., California Cartage Co. v. United States*, 721 F.2d 1199, 1204 n. 4 (9th Cir. 1983) (declining to rule on issue of statutory interpretation when not raised before an agency), *cert. denied*, —— U.S. ——, 105 S.Ct. 110, 83 L.Ed.2d 53 (1984); *cf. Railroad Yardmasters of America v. Harris*, 721 F.2d 1332, 1338 & n. 20 (D.C.Cir.1983) (considering an unraised issue of statutory interpretation when it implicated the "power or jurisdiction" of the National Mediation Board).

▮ Similarly, Reid's constitutional assertion, which we recharacterized above, that a procedural error resulted in an excessive sanction remains unexplained because we disagreed with her contention that it was a general challenge to the statute. Reid has demonstrated no reasonable grounds for her failure to seek a lesser sanction on this issue, when she sought and received a lesser sanction on other grounds. Thus, we also conclude that Reid failed to meet the "reasonable grounds" requirement on this issue, and we decline to rule on this unasserted procedural error. *See, e.g., Tiger International, Inc. v. CAB*, 554 F.2d 926, 936 n. 18 (9th Cir.) (refusing to address an unraised due process claim), *cert. denied*, 434 U.S. 975, 98 S.Ct. 532, 54 L.Ed.2d 467 (1977); *Island Airlines v. CAB*, 363 F.2d 120, 124 (9th Cir.1966) (refusing to consider unasserted procedural errors). *Accord Bond v. NTSB*, 608 F.2d 835, 835–36 (10th Cir.1979) (refusing to consider an unraised venue objection); *Barnum v. NTSB*, 595 F.2d 869, 871 n. 9 (D.C.Cir.1979) (failure to object to a dis-

crepancy between "careless" and "reckless" flight precluded appellate review) (*Barnum*).

## III

We now proceed to the merits of Reid's remaining constitutional issues. Reid's first argument is that the suspension process unconstitutionally deprived her of her right to pursue her chosen profession. She relies on the *Slaughterhouse Cases*, 111 U.S. 746, 4 S.Ct. 652, 28 L.Ed. 585 (1884), for this proposition, but her argument is wholly devoid of merit. The rationale underlying the *Slaughterhouse Cases* has long been abandoned. *E.g., Nebbia v. New York*, 291 U.S. 502, 527–28, 54 S.Ct. 505, 511–512, 78 L.Ed. 940 (1934).

Reid's second constitutional argument is that the "public interest" standard, under which the Administrator has authority to suspend airman's certificates, is unconstitutionally vague. A threshold issue concerns whether Reid's interest in her ATP certificate constitutes a liberty or property interest protected by the fifth amendment. Because neither party has raised this issue, for purposes of our analysis we will assume, without deciding, that Reid's interest in her certificate is a property interest protected by the due process clause. *See Holmes v. Helms*, 705 F.2d 343, 345 (9th Cir.1983) (per curiam) (*Holmes*).

Section 609(a) of the Act, 49 U.S.C. § 1429(a), provides that an airman's certificate may be suspended "if, as a result of any ... investigation made by the Secretary of Transportation, he determines that *safety in air commerce or air transportation and the public interest* requires" such suspension. (Emphasis added). The statute also provides that the NTSB, after notice and a hearing, "may amend, modify or reverse the Secretary of Transportation's order if it finds that *safety in air commerce or air transportation and the public interest* do not require affirmation of the Secretary of Transportation's order." *Id.* (emphasis added). Thus, both the Administrator and the NTSB apply the same standard.

In *Holmes*, we held that this standard was "synonymous with public safety." 705 F.2d at 345–46. We also concluded that a "public safety" standard was sufficiently definite to satisfy due process. *See id.* Our review of the record reveals that the NTSB determined that Reid's airplane was unsafe, that its flyability was "fortuitous," and that Reid acted in a manner grossly inconsistent with her extraordinary 30,000 hours of flying experience. Reid does not challenge these findings in her appeal. We conclude that the NTSB's findings and conclusion reasonably related to a "public safety" standard, and that neither the standard nor its application violated Reid's due process rights.

Reid's last argument is that the Administrator's ex parte sanction procedure violated her procedural due process rights. We disagree. Procedural due process requires only adequate notice and an opportunity to be heard. *See generally Board of Regents v. Roth*, 408 U.S. 564, 569–70 & n. 7, 92 S.Ct. 2701, 2705 & n. 7, 33 L.Ed.2d 548 (1972). Our review of the record reveals that Reid received written notice from the regional staff of a proposed suspension for violation of specified regulations, that she then had an informal conference with the regional staff, after which the regional staff issued an order of suspension which, contrary to Reid's assertion, discussed the relevant facts and reasons for the order. We conclude that this procedure did not violate due process.

Moreover, we also disagree with Reid's argument that her rights were violated because the ex parte procedure does not ensure that pilots committing the same violation will receive the same sanction. The Supreme Court has rejected this contention: "The employment of a sanction within the authority of an administrative agency is ... not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases." *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 187, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973) (*Glover*). *See also Barnum*, 595 F.2d at 871–72. Thus, the potential for a lack of uniformity in sanctions does not make the sanction procedure unlawful. *See Glover*, 411 U.S. at 186, 93 S.Ct. at 1458; *Barnum*, 595 F.2d at 872. We conclude, therefore, that the ex parte

process did not violate Reid's constitutional rights.

NTSB ORDER AFFIRMED.