59 F.3d 175
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Pacita Imana HILACION, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-70982.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 15, 1995.*
Decided June 19, 1995.
 
 Petition to Review a Decision of the Immigration and Naturalization Service; No. Alq-vsm-zmd.
 I.N.S.
 REVIEW DENIED.
 Before: HUG, ALARCON, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Pacita Imana Hilacion ("Petitioner"), a native and citizen of the Philippines, petitions for review of the decision of the Board of Immigration Appeals ("BIA"), finding her deportable as a result of a fraudulent marriage, 8 U.S.C. Sec. 1186a(b), and denying her applications for hardship waiver pursuant to 8 U.S.C. Sec. 1186(c)(4)(6), and for voluntary departure.
 
 
 3
 Petitioner contends 1) the Immigration Judge ("IJ") lacked jurisdiction because the Order to Show Cause ("OSC") was defective as a result of being issued prior to the District Director's final denial of all relief applications, and that such defect deprived her of her Fifth Amendment right to due process; 2) the INS failed to establish by a preponderance of the evidence that her marriage was a sham; 3) she was not informed of her constitutional right to counsel prior to giving statements to an Immigration Officer; 4) the IJ erred in denying her request for a hardship waiver pursuant to 8 U.S.C. Sec. 1186(c)(4); and 5) the BIA erred in vacating the IJ's grant of voluntary departure. We have jurisdiction over this appeal pursuant to 8 U.S.C. Sec. 1105(a)(1), and we deny the petition.
 
 1. Order to Show Cause
 
 4
 Petitioner contends the district court lacked jurisdiction because the OSC was issued prior to the District Director's denial of her applications for relief. Petitioner, however, did not raise this issue before either the IJ or the BIA. "Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter." Vargas v. United States Dep't of Immigration and Naturalization, 831 F.2d 906, 907-08 (9th Cir. 1987). Therefore, we conclude we do not have jurisdiction to consider whether the issuance of the OSC was defective.
 
 
 5
 Petitioner also contends the defective issuance of the OSC deprived her of her Fifth Amendment right to due process. Although due process claims generally are exempt from the requirement that they be initially raised before the BIA, "'a petitioner cannot obtain review of procedural errors in the administrative process that were not raised before the agency merely by alleging that ... such error violates due process."' Id. at 908 (quoting Reid v. Engen, 765 F.2d 1457, 1461 (9th Cir. 1985)). Petitioner made no attempt to show that the allegedly defective OSC amounted to anything more than a "'procedural error[] correctable by the administrative tribunal."' Id. (quoting Bagues-Valles v. INS, 779 F.2d 483, 484 (9th Cir. 1985)). Therefore, we also lack jurisdiction to consider Petitioner's contention that she was denied due process.
 
 2. IJ's Finding of a Sham Marriage
 
 6
 Petitioner contends the IJ erred in finding that the government established by a preponderance of the evidence that her marriage was a sham. The BIA found that the IJ adequately and correctly addressed this issue. Therefore, we review the IJ's decision. Campos-Granillo v. INS, 12 F.3d 849, 852 (9th Cir. 1993).
 
 
 7
 The government submitted sworn statements made by Petitioner and her husband, Alfonso Hilacion ("Hilacion"), as evidence that the marriage was a sham. Hilacion admitted in his sworn statement that the "marriage was an arranged marriage and entered into by [him] solely for the purpose of helping Pacita gain an Immigration benefit to enter the United States." He further admitted that the marriage was arranged by a man known to him as "Garrigo," and that Garrigo paid for Hilacion's plane ticket and hotel room and agreed to pay him $1,000 for marrying Petitioner. Hilacion stated he had never slept with Petitioner and had never had sex with her.
 
 
 8
 Similarly, Petitioner gave a sworn statement admitting the marriage had been arranged by Ligaya and Romulo "Garingo" and that she had not spent one day or night with her husband since arriving in the United States over one month before. She did state that she had sex with Hilacion on the night of their marriage.
 
 
 9
 The testimony of Hilacion and Petitioner before the IJ, however, departed drastically from their prior sworn statements. At the deportation hearing, Hilacion testified that he stayed with Petitioner off and on after she arrived in the United States; that they have established a household in the same apartment; that they have a regular sexual relationship; that they go to the store together; that Petitioner cooks and cleans for him; and that they filed a joint tax return in 1992. Hilacion also testified that he married Petitioner voluntarily and did not receive any payment for marrying her. Finally, Hilacion testified that much of the information he had provided in his sworn statement was false because he was afraid of the Immigration officer.
 
 
 10
 Similarly, Petitioner testified that she had a sexual relationship with Hilacion; that she now resided with Hilacion; and that she cooked his meals and washed his clothes. She testified that she had not read her prior sworn statement, that it had not been read to her, and that she did not understand it. This contradicted the testimony of the government interpreter who stated that Petitioner's complete statement was read back to her before she signed it.
 
 
 11
 Because of the irreconcilable versions of the marriage as described in the sworn statements and in oral testimony at the deportation hearing, the IJ's decision turned on his credibility finding as to Petitioner and her husband. We "review[] credibility findings for substantial evidence." Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir. 1987). "We must defer to an IJ's credibility determinations that are fairly supported by the record." Martinez-Sanchez v. INS, 794 F.2d 1396, 1400 (9th Cir. 1986).
 
 
 12
 The IJ found the testimony of Petitioner and Hilacion to be "wholely [sic] untrustworthy." The IJ first noted the sharply conflicting accounts in Petitioner and Hilacion's sworn statements as opposed to their testimony at the hearing. The IJ stated: "[Hilacion's] testimony was scattered, imprecise and generally unbelievable. He is one of the most unreliable witnesses we have seen. He did not even recall the day of the week the parties were married. Further, [Petitioner's] testimony under oath was similarly unpersuasive." The IJ also found Hilacion's statement that he had given false information because he was frightened of the Immigration Officer to be incredible considering the softspoken demeanor of the Immigration Officer.[1] Finally, the IJ noted that Petitioner had presented no evidence to suggest that the testimony of the government interpreter and Immigration Officer who were present when the sworn statements were given was in any way false.
 
 
 13
 The IJ provided "specific, cogent reason[s]" for his finding that the testimony of Petitioner and Hilacion was incredible. Turcios, 821 F.2d at 1399 (internal quotations omitted). Therefore, the IJ was correct in determining that, based on the sworn statements of Petitioner and her husband, the government established by a preponderance of the evidence that the marriage was a sham.
 
 3. Right to Counsel
 
 14
 Petitioner contends that she was not advised of any constitutional right to counsel at the time she gave her sworn statement. What Petitioner fails to understand is that at the time she gave her sworn statement she had no constitutional right to counsel.
 
 
 15
 Aliens have a Fifth Amendment due process right to be represented by counsel in deportation proceedings at their own expense. Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 554 (9th Cir. 1990). This right is also guaranteed by statute and regulation. See 8 U.S.C. Sec. 1362; 8 C.F.R. Sec. 242.1. However, at the time Petitioner gave her sworn statement to the Immigration Officer, no deportation proceedings had yet been commenced against her. The sworn statement was given on January 25, 1991. The first OSC was not issued until May 20, 1991. Therefore, at the time Petitioner gave her sworn statement to the Immigration officer, she had no constitutional right to counsel of which to be informed.
 
 4. Hardship Waiver
 
 16
 Petitioner contends the IJ erred in denying her application for hardship waiver because he failed to consider the hardship her deportation would cause her husband. Petitioner's argument is without merit for two reasons.
 
 
 17
 First, the IJ properly made findings as to the factors which are to be considered when ruling on an application for hardship waiver. See Matter of Anderson, 16 I&N Dec. 596 (BIA 1978). Second, assuming without deciding that hardship to an alien's spouse could be considered in relation to an application for hardship waiver under Sec. 1186a(c)(4), Petitioner presented no evidence in the record of what, if any, hardship her husband might suffer as a result of her deportation.[2] The IJ's denial of hardship waiver is supported by the record.
 
 5. Voluntary Departure
 
 18
 Petitioner contends the BIA erred in vacating the IJ's grant of voluntary departure. We disagree.
 
 
 19
 Pursuant to 8 U.S.C. Sec. 1254(e), an alien that can establish good moral character may be granted voluntary departure in the discretion of the Attorney General. Section 1101(f), however, provides in pertinent part:
 
 
 20
 (f) For the purposes of this chapter--
 
 
 21
 No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was--
 
 
 22
 ....
 
 
 23
 (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter ....
 
 
 24
 8 U.S.C. Sec. 1101(f).
 
 
 25
 The IJ specifically found Petitioner's testimony to be unbelievable. Therefore, the IJ was statutorily precluded from finding Petitioner to be of good moral character. Because Petitioner was ineligible for voluntary departure, the BIA correctly vacated that part of the IJ's decision.
 
 
 26
 The petition for review of the BIA's decision is
 
 
 27
 DENIED.
 
 
 
 *
 ??
 
 
 **
 This publication is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The Immigration Officer also testified at the deportation hearing
 
 
 [2]
 This court takes a dim view of Petitioner's counsel's attempt on appeal to present evidence of hardship to Petitioner's husband which is not contained in the administrative record