# Award of Attorney Fees in Administrative Adjudications Under § 609 of the Federal Aviation Act

The Equal Access to Justice Act (EAJA) authorizes an award of attorney fees to prevailing parties in administrative adjudications conducted by the National Transportation Safety Board under § 609 of the Federal Aviation Act to review decisions of the Federal Aviation Administration

There is no support in the terms of the EAJA or its legislative history for an argument that an individual's eligibility for an award of fees—and an agency's liability—are confined to situations in which the agency whose position is at issue in the adjudication also controls its conduct; in any case, agencies generally have only a limited power to review their administrative law judges' decisions under the EAJA.

March 23, 1982

## MEMORANDUM OPINION FOR THE GENERAL COUNSEL, DEPARTMENT OF TRANSPORTATION

This responds to your request for the Department's opinion whether the Equal Access to Justice Act authorizes an award of attorney fees to a party which prevails in administrative adjudications conducted by the National Transportation Safety Board (NTSB) under § 609(a) of the Federal Aviation Act of 1958, 49 U.S.C. § 1429 (1976).[1] For reasons stated hereafter we believe it does.

A second question raised in your November 17 request, relating to the source of funds to pay a fee award under the Act, is addressed in a separate opinion of this date.

### I. Proceedings Under § 609(a)

The NTSB has jurisdiction to review on appeal orders of the Federal Aviation Administration (FAA) amending, suspending, or revoking certain certificates issued by the Secretary of Transportation under the Federal Aviation Act. *See* 49 U.S.C. § 1903(a)(9). These certificates include airman certificates issued to pilots and other flight operators, and aircraft operating certificates issued to owners and operators of air carriers. *See* 49 U.S.C. §§ 1422 and 1423. Under

---

[1] Your letter phrases the question somewhat differently: it asks "whether the Act authorizes one agency to make fee awards against another agency in covered administrative proceedings." As will become apparent, we think the question so phrased is, as we understand your particular concerns, unnecessarily broad. The issue of the Act's applicability in § 609 proceedings is separate from that of the FAA's authority and responsibility to expend its funds to pay awards made under the Act. The latter issue is discussed in our separate opinion to you of this date on "Funding of Attorney Fee Awards under the Equal Access to Justice Act."

§ 609 of that Act, an FAA action must be based upon a determination that "safety in air commerce or air transportation and the public interest" requires the action; in practice, its order is generally occasioned by the certificate holder's apparent violation of one or more sections of the Federal Aviation Regulations, 14 C.F.R. Parts 1 through 199 (1981). *See, e.g., Barnum* v. *NTSB,* 595 F.2d 869 (D.C. Cir. 1979) (FAA order suspending pilot's license for two low-flying incidents upheld). While § 609 requires the FAA to advise the certificate holder of charges against him, and to give him an opportunity to respond to them prior to taking any action to amend, suspend, or revoke his certificate, the law does not require that the FAA's action be preceded by any sort of formal hearing, nor does the FAA provide such a hearing as matter of discretion. A certificate holder is, however, afforded an opportunity to appeal the FAA's action to the NTSB, a procedure which, as described below, provides for such a hearing.

Section 609 describes the procedures governing appeals to the NTSB from an FAA order amending, suspending, or revoking a certificate, and reads in pertinent part as follows:

> Any person whose certificate is affected by such an order of the Administrator under this section may appeal the Administrator's order to the Board and the Board may, after notice and hearing, amend, modify, or reverse the Administrator's order if it finds that safety in air commerce or air transportation and the public interest do not require affirmation of the Administrator's order. In the conduct of its hearings the Board shall not be bound by findings of fact of the Administrator. The filing of an appeal with the Board shall stay the effectiveness of the Administrator's order unless the Administrator advises the Board that an emergency exists and safety in air commerce or air transportation requires the immediate effectiveness of his order, in which event the order shall remain effective and the Board shall finally dispose of the appeal within sixty days after being so advised by the Administrator. The person substantially affected by the Board's order may obtain judicial review of said order under the provisions of section 1006 [49 U.S.C. § 1486], and the Administrator shall be made a party to such proceedings.

Federal Aviation Act of 1958, Pub. L. No. 85–726, § 609, 72 Stat. 731, 779–80 (1958). *See* 49 U.S.C. § 1429(a).

Formal hearings in connection with appeals from FAA orders are conducted by administrative law judges employed by the NTSB. *See* 49 C.F.R. § 800.23. Procedures governing these hearings are set out in 49 C.F.R. Part 821, with special rules applicable to proceedings under § 609 contained at §§ 821.30–821.33. Under these rules, the order of the FAA from which appeal has been taken is filed with the NTSB as a complaint; the allegations must be proven by the Administrator of the FAA in the subsequent hearing before the law judge. The Administrator has the burden of proving that the action taken against

the certificate holder was reasonable and in accordance with NTSB precedent. Both the certificate holder and the FAA are entitled to appeal a law judge's initial decision to the NTSB itself; in the absence of such an appeal, however, the law judge's initial decision becomes final. *See* 49 C.F.R. § 821.43. If such an appeal is taken, the NTSB reviews the law judge's findings of fact and conclusions of law and, if it determines that either are in error, may itself make findings and issue an appropriate order, or may remand the matter with instructions. An order of the NTSB may be appealed to the Court of Appeals for the District of Columbia by "any person disclosing a substantial interest in such order." 49 U.S.C. § 1486(a).[2]

## II. The Equal Access to Justice Act

Section 203(a)(1) of the Equal Access to Justice Act (the Act), Pub. L. No. 96–481, 94 Stat. 2321, 2325 (1980), amends Title 5 of the United States Code to provide for an award of attorney fees and other expenses to parties prevailing against an agency of the United States in certain types of administrative adjudications. The pertinent provision, to be codified as 5 U.S.C. § 504(a)(1), reads as follows:

> (a)(1) An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency as a party to the proceeding was substantially justified or that special circumstances make an award unjust.

An "adversary adjudication" is defined in § 504(b)(1)(C) as:

> an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose of establishing or fixing a rate or for the purpose of granting or renewing a license. . . .

Your letter concedes, as it must, that § 609 proceedings before the NTSB and its administrative law judges meet the definition of an "adversary adjudication" under § 504(a)(1): they are conducted under 5 U.S.C. § 554, and are neither for the purpose of "fixing a rate" nor for "granting or renewing a license." Notwithstanding this, you take the position that a fee award under the Act is unavailable in § 609 proceedings, arguing that § 504(a)(1) is confined in its applicability to

---

[2] While the statutory language is unclear with respect to whether the FAA is entitled to appeal from an NTSB order, and while there appear to be no judicial holdings on point, we understand that the statutory phrases "person substantially affected" and "person disclosing a substantial interest" have been interpreted by both the FAA and the NTSB to limit the right to seek judicial review of an NTSB order to holders of certificates. *See also* H.R. Rep. No. 2556, 85th Cong., 2d Sess. 89 (1958) (provision permitting FAA Administrator to seek judicial review omitted from final version of 1958 Act).

those proceedings under 5 U.S.C. § 554 in which an agency both prosecutes and adjudicates an action. That is, you believe that § 504(a)(1) by its terms applies only to a proceeding in which the "agency that conducts" it is also the "party to the proceeding" against whom the private party must prevail. We do not agree that the authority conferred by § 504(a)(1) may be construed so narrowly, particularly where such a construction would result in exempting from the Act's coverage a class of adversary adjudications no different in their effect on private individuals than other adjudications plainly covered by the terms of the Act.

The terms of § 504(a)(1) admittedly do not speak directly to the situation in which the agency conducting the adversary adjudication is not also the agency whose position is at issue.[3] We do not agree, however, that the language of the section must be read to confine its application to situations involving a single agency. The use of the article "the" to identify the agency whose position as a party to the proceeding may or may not be found to be substantially justified does not, in our view, necessarily identify it as the same agency which conducts the adversary adjudication and employs the adjudicative officer. Finding the plain language of § 504(a)(1) not to be conclusive, we must interpret the fee-shifting provisions of § 504(a)(1) in light of other provisions of the statute, the legislative history of the Act, and Congress' purpose in enacting it.[4]

The purpose of the Act, as reflected in its preamble, is "to diminish the deterrent effect of seeking review of or defending against, [unreasonable] governmental action" because of the expense involved. See 5 U.S.C. § 504 note. The legislative history of the Act is replete with references to situations in which individuals are forced to expend large sums to defend themselves against unjustified governmental action. The House Judiciary Committee noted in its report that:

> [f]or many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process. When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.

---

[3] Such situations are, to be sure, comparatively rare in the administrative context Indeed, we are aware of only two similar situations to which the Act on its face would appear otherwise to be applicable. these are appeals from citations of the Secretary of Labor before the Occupational Safety and Health Review Commission under 29 U S.C. § 659, and appeals from citations of the Secretary of Labor before the Federal Mine Safety and Health Review Commission, 30 U S.C § 815 However, as discussed in the text *infra*, Congress was clearly cognizant in enacting this Act of the review procedure contained in 29 U.S.C. § 659.

[4] Even if the terms of § 504(a)(1) were less ambiguous with respect to their applicability to adjudications involving more than one agency, it is a familiar maxim of statutory construction that a remedial statute should be liberally construed to effect the remedial purpose for which it was enacted. See 3 D Sands, Sutherland Statutory Construction § 60 01 (4th ed. 1974). Thus, even if the meaning of a statute seems plain on its face, "[t]he circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect." *Watt v Alaska*, 451 U.S. 259, 266 (1981), *citing Church of the Holy Trinity v. United States*, 143 U S. 457, 459 (1892). And, if the plain meaning of the statute produces "an unreasonable [result] 'plainly at variance with the policy of the legislation as a whole' [the Supreme Court] has followed that purpose rather than the literal words." *United States v American Trucking Ass'ns*, 310 U.S. 534, 543 (1940). *See also Steelworkers v. Weber*, 443 U.S. 193, 201 (1979); *Train v Colorado Public Interest Research Group*, 426 U.S. 1, 10 (1976).

200

H.R. Rep. No. 1418, 96th Cong., 2d Sess. 9 (1980) (hereafter House Report). The result in many cases is that "the Government with its greater resources and expertise can in effect coerce compliance with its position." *Id.* at 10.

The fee-shifting provisions of the Act were intended not only to reduce substantially the deterrent effect on individuals of this disparity in resources, but also to "insure[] the legitimacy and fairness of the law." *Id.* The Act thus recognizes that "the expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate or adjudicate has helped to define the limits of federal authority." *Id. See also* S. Rep. No. 253, 96th Cong., 1st Sess. 5–6 (1979).

We believe it would be inconsistent with the Act's broad remedial purpose to carve out of the Act's coverage any particular category of "administrative adjudications" as that term is defined in the Act, at least absent any suggestion in the legislative history that Congress intended to do so. More importantly, we find no support in the Act or its history for your position that an individual's eligibility for a fee award—and an agency's liability—should be confined to situations in which the agency whose position is at issue in the adjudication also controls its conduct.[5]

Reference to other specific provisions of the Act reinforces our conclusion that § 504(a)(1) was not intended to apply only to proceedings conducted by one agency as a review of action taken by another agency. For example, § 504(d)(1) provides that awards under § 504(a)(1) "may be paid by *any* agency over which the party prevails. . . ." (emphasis added). This language suggests that Congress at the very least contemplated that a prevailing party would be entitled to an award from an agency other than the one actually conducting the proceeding.

Our conclusion that Congress did not intend to render the Act inapplicable in proceedings conducted by one agency to review actions taken by another is reinforced, if not required, by numerous references in the legislative history to the situation presented by appeals to the independent Occupational Safety and Health Review Commission from citations of the Secretary of Labor under

_____

[5] Your position appears to be premised on the assumption that an agency which both conducts and prosecutes an administrative adjudication has the power to review (and potentially to reverse) the findings of the "adjudicative officer" which trigger the statute's directive to pay a fee award However, as we read the terms of § 504(a)(1) in light of Congress' purpose, they preclude review of these findings at the administrative level. The fee award called for by § 504(a)(1) is mandatory unless certain findings are made by the adjudicative officer of the agency. And, the wording of § 504(a)(3) contains an explicit suggestion that the decision of the adjudicative officer on these issues was intended by Congress to be unreviewable at the administrative level· "The decision of the adjudicative officer of the agency under this section shall be made a part of the record containing the final decision of the agency. '' We recognize that Congress' failure to provide for agency review of a fee award may result in an agency's being unable to obtain judicial review of a fee award except in the context of an appeal on the merits of the underlying decision of the adversary adjudication This is because only the private party may appeal from a fee determination under § 504(a)(1) *See* § 504(c)(2) On the other hand, an interpretation of the Act to permit an agency the last word on whether its position in the underlying adjudication was or was not substantially justified would undermine the very purpose which Congress had in enacting the law This is underscored by the standard of judicial review of a failure to make an award provided in § 504(c)(2)· a court may modify the fee determination under § 504(a)(1) only if it finds that the failure to make an award was "an abuse of discretion " We have no doubt that applying this standard of judicial review to an agency's assessment of the reasonableness of its own conduct would result in few fee awards being made under § 504(a)(1). This is not to say that no aspect of the adjudicative officer's fee determination ought to be reviewable within the agency, it is simply to say that the agency has no authority to revise the adjudicative officer's findings on the two questions which under the Act are determinative of an award's being made: that an agency's position was not "substantially justified," and that no "special circumstances make an award unjust."

29 U.S.C. § 659. *See, e.g.,* 126 Cong. Rec. 27681–82 (1980) (statement of Sen. DeConcini); 126 Cong. Rec. 28653–54 (1980) (statement of Rep. Symms). In light of these references, we believe it would be unreasonable to conclude that Congress did not intend to authorize an award of fees in OSHA adjudications against the Secretary of Labor. We see no relevant basis on which to distinguish an award against the FAA in § 609 proceedings.

Moreover, the potential for administrative abuse inherent in the OSHA context, which Congress plainly intended to correct through the fee-shifting mechanism of § 504(a)(1), is present in the § 609 situation as well. The FAA may, by unilateral action unaccompanied by full-scale procedural protections, impose a significant burden on a private person's ability to carry on a business or earn a livelihood. The burden, once imposed, can only be lifted through that person's willingness to resort to what may be lengthy and expensive administrative appeal and, possibly, litigation. Thus, it may be "more practical to endure an injustice than to contest it." House Report at 9. We can think of no reason, consistent with the purpose of the Act, why the agency which imposed the burden should escape liability for attorney fees where its position is not substantially justified.

We conclude, therefore, that proceedings under § 609 were intended by Congress to be covered by the Act. Thus, in the event the FAA's position is not found to be substantially justified by the administrative law judge presiding over the adjudication, the prevailing party is entitled to an award of fees against the FAA.[6]

We recognize that our conclusion with respect to the Act's applicability to § 609 proceedings may not appear to be directly responsive to your concern that the Act not be interpreted "to permit one agency to make a fee award against another." In this regard, we would simply point out that the Act in this case does no more than supplement remedial authority which Congress has already conferred on the NTSB to review and, if necessary, reverse FAA orders under § 609 of the Act.

In addition, whether or not an award of fees will be made under § 504(a)(1) depends upon certain findings by the administrative law judge—findings which, under the terms of the Act would not in any event be administratively reviewable by the agency conducting the proceeding. *See* note 5, *supra.* The position of the FAA in § 609 proceedings is in this sense no different from the position of an agency which both conducts and prosecutes an administrative adjudication. In either case, an administrative law judge acting independently is charged with making the final administrative determination.

Finally, we do not believe our conclusion with respect to the applicability of the Act in § 609 proceedings is inconsistent with the position set forth, taken in context, in the Deputy Attorney General's letter of May 12, 1981, to the Administrative Conference of the United States. Those comments express concern over a construction of the Act which would impose on an agency, having no

---

[6] As stated in note 1, *supra,* the issue of the FAA's authority and responsibility to expend its funds to pay awards is discussed in our separate opinion to you of this date on "Funding of Attorney Fee Awards under the Equal Access to Justice Act."

prosecutorial or decisional authority in an administrative adjudication, responsibility for the payment of a fee award simply because, as an intervenor, it took a position adverse to the interests of a private party. While we have not directly studied that issue, we do not see any basis for differing with the Deputy Attorney General's position. However, we decide only that when the FAA takes an adverse action under § 609, it may be subjected to payment of an award under the Equal Access to Justice Act in a proceeding brought to review its action before the NTSB.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*