John P. **MONAHAN**

v.

The **UNITED STATES.**

No. 243-62.

United States Court of Claims.

Dec. 17, 1965.

Thomas A. Ziebarth, Washington, D. C., attorney of record, for plaintiff.

Mary J. Turner, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DAVIS, Judge.

A veteran employed in Denver, Colorado, by the General Services Administration (GSA) was removed in August 1958 from his position as Traffic Management Officer, GS–12, on charges that, in violation of an agency prohibition against accepting gratuities, he allowed a trucking company with which he had official dealings to pay his hotel bills on six occasions during 1957, and also that in the same year he borrowed significant sums of money from officials of three such firms.[1] On appeal to the Civil Service Commission the removal was upheld at all levels; the last action was by the Civil Service Commissioners themselves in April 1960.

The prime count brought against the removal is that it was initiated and executed by the Personnel Officer of Region 8 of GSA, an official without authority, plaintiff says, to remove him. If this is so, the removal was undoubtedly void. See Zirin v. McGinnes, 282 F.2d 113 (C.A.3, 1960), cert. denied, 364 U.S.

---

[1]. The charges were dated July 8, 1958; plaintiff replied on July 18, 1958; the charges were sustained on July 31, 1958; and the removal was made effective on August 10, 1958.

921, 81 S.Ct. 286, 5 L.Ed.2d 260. Defendant urges that we refrain from considering this issue because plaintiff failed to raise it in timely fashion before the Civil Service Commission. The point was not made to the Tenth Civil Service Region or the Board of Appeals and Review, but it was presented in the petition to the Commissioners to reopen and reconsider the decisions of the lower echelons. Since the Commissioners appear to have passed upon the merits of this petition, and after consideration to have rejected the claim of lack of authority, we hold that plaintiff has adequately exhausted his administrative remedy and may urge the contention in this court.

█ It is not easy to untangle the skein of authority under which the Personnel Officer acted. Indisputably, the head of the agency, the Administrator of General Services, had statutory power to appoint and separate his employees, including Regional Office employees like plaintiff. Section 208 of the Federal Property and Administrative Services Act of 1949, 63 Stat. 391, as amended, 5 U.S.C. § 630h. This power could, of course, be delegated,[2] but the difficulty is that it is not wholly clear that in July–August 1958 there was in fact a delegation to anyone—in particular, to the Personnel Officer of this Regional Office. We have only one sure base-point. On July 31, 1957, the power to appoint and remove an employee of plaintiff's level was plainly delegated by the Administrator to the Regional Commissioners; Administrative Order No. 181 Revised (of that date) expressly gave this competence. The power also appears to have been passed on by the Regional Commissioner of Region 8 to his Personnel Officer. But on February 17, 1958—before the present removal proceedings against plaintiff—the Administrator of General Services issued a new general delegation of authority to the Regional Commissioners (Order No. 328). With respect to

personnel, the later order specifically delegated the power to appoint, while omitting any reference to the power of removal. Under the heading "Revocation of Existing Delegations", this February 1958 order cryptically declared: "This delegation of authority supersedes authorities delegated to the Regional Commissioners in Parts 5, 6, and 7, and subsection 801.03, Chapter III, Volume GS 1–2." Thereafter, on May 1, 1958, the Regional Commissioner at Denver promulgated a redelegation of authority (Regional Commissioner's Order No. 107), granting to the Chief of the Personnel Division (i. e., the Personnel Officer here involved) the personnel powers delegated by the Administrator in Order No. 328, with the special proviso that "the above redelegations are subject to conditions and provisions of Administrative Order No. 181, Revised, dated July 31, 1957; Administrative Services Order No. 15, dated July 31, 1957, and supplemental instructions issued by Central Office."

From this welter of orders, the plaintiff draws the conclusion that, at the time he was removed in July–August 1958, neither the Regional Commissioner nor his Personnel Officer had the right to dismiss employees. The chain of reasoning is simple: removal authority existed under the Administrator's Order No. 181, but that directive was superseded in February 1958 by Order No. 328 which withheld all removal power from the Regional Commissioner and revoked the prior grant in Order No. 181; having no removal prerogative, the Regional Commissioner could not, and did not, vest such authority in his Personnel Officer.

This argument is not unappealing, but we cannot adopt it. Plaintiff's theory would inevitably require us to hold that, after February 1958, all power to remove even the lowliest GSA employee at the remotest spot in the country was centralized in Washington. It is difficult to be-

---

2. Section 205(d) of the Act, 63 Stat. 390, as amended, 40 U.S.C. § 486(d), authorized the Administrator to delegate and au-  thorize redelegation of his personnel power (among others).

lieve that the Administrator of General Services, heading a huge far-flung agency with massive regional divisions, would intend to gather into the central office all authority to remove employees of all ranks. If that was in fact what was done, we would, of course, be controlled by the Administrator's decision. But although GSA certainly cannot be given high marks for the sorry state of coordination and integration of its delegatory orders, we find, when we work through them, that in all probability the Administrator did not intend to center removal authority in himself (and his Washington staff) or to deprive the Regional Offices of that right.

There are, first, important indications that the Regional Commissioners were considered by GSA to be the active and fully-empowered heads of their respective areas, with the usual managerial authority. Order No. 328, supra, commenced with the general statement that "the primary policy governing this delegation of legal authority is that each responsible official of GSA shall have maximum authority under the law consistent with assigned responsibilities." The delegation of authority issued by the Administrator on July 30, 1958, 23 F.R. 5726, declared that "the Regional Offices, headed by Commissioners, are completely integrated and parallel the organization pattern of the Central Office." Regional offices of this character are likely to be granted routine powers of discipline over lesser-ranked field employees, including the authority to separate. Ambiguous delegations should be read with this in mind.

Second, it seems probable that the part of Order No. 181, supra, which explicitly delegated to the regions the power to remove most of their employees [3] was never superseded or rescinded. Order No. 328 did not in terms revoke No. 181, and we have not been shown that this aspect of No. 181 was covered by the previous "authorities delegated to the Regional Com-

missioners" which were expressly superseded by No. 328. While No. 181 was itself omitted from a list of GSA orders outstanding in May 1958, that list did include Administrative Services Order No. 15 ("Effecting Regional Personnel Actions under Administrative Order No. 181, Revised", issued in July 1957). And Order No. 15 contained a section on "Removal Actions" showing that the central office would pass only upon removal charges against the higher-ranking officials mentioned in footnote 3, supra. The clear inference was that the removal of lower-grade workers was left to the Regional Offices. In addition, after the issuance of Order No. 328, the Regional Commissioner (as we have pointed out) delegated his personnel powers to his Personnel Officer "subject to conditions and provisions of Administrative Order No. 181, Revised, dated July 31, 1957; Administrative Services Order No. 15, dated July 31, 1957, and supplemental instructions issued by Central Office." Thus, at the times relevant to plaintiff's removal, there seems to have been outstanding, and deemed by the Agency to be still operative, a central office document—Order No. 15—which referred to the personnel part of Order No. 181 and specifically contemplated that removals of persons in grades higher than plaintiff would be effected at the national level. Through Order No. 15, or by its own force, Order No. 181 also appears to have continued with at least a residual spark of life.

We think that the most rational conclusion from all of this is that the power to dismiss employees of plaintiff's rank must have been intended to remain with the Regional Commissioner, even after the issuance of Order No. 328. The delegation of removal power to the Regional Office—explicitly contained in Order No. 181 and implicitly assumed in Order No. 15—has not been proved to have lapsed. The Regional Commission-

3. "To effect removals from all positions except those of Deputies and Assistants to Regional Commissioners, Heads of

Services and Staff Officers, Deputy Regional Directors and Chiefs of Divisions."

er, in turn, duly delegated his power to the Personnel Officer who removed plaintiff. That officer therefore had valid authority.[4]

Plaintiff does not argue the five other reasons set forth in his petition for invalidating his removal, but the defendant moves for summary judgment on the ground that they are all without merit. We are given no adequate reason for remitting these questions for trial and therefore dispose of them now. Cf. Begendorf v. United States, 340 F.2d 362, 169 Ct.Cl. 293 (January 1965).

 The first of these challenges is that the provision in the GSA manual forbidding the acceptance of gratuities and favors had lost its effectiveness through long non-enforcement. Plaintiff proffers no proof of this contention nor anything calling for a trial; the Government, on the other hand, shows that in 1954 plaintiff signed a document certifying that he had read and understood the GSA Standards of Conduct which included this very prohibition. The second of plaintiff's minor points is that the agency suspended him during his 30-day notice period without giving its reasons; this point is valueless both because he did not adequately raise it before the Civil Service Commission and because the agency did, in effect, state the reasons for the suspension. The answer to the third and fourth of the attacks—that the penalty of dismissal was overly harsh and discriminatory against plaintiff—is that GSA and the Commission could properly determine that it was a serious offense warranting dismissal to accept the payment of six hotel bills and to borrow three separate times from three different truckers —all in one year. Plaintiff correctly says that his superior was merely reprimanded, not separated, for violating the ban on gratuities, but the latter's transgression was only the much lesser one of

twice accepting the payment of hotel bills. Finally, we reject plaintiff's contention that his removal was founded on reasons other than those set forth in the letter of charges; the Board of Appeals and Review properly ruled that the mere fact that other improprieties by plaintiff were mentioned at some point in the inquiry into his conduct does not mean that the removing officer considered those other instances. The letter of removal was confined to the charges. Cf. Krennrich v. United States, 340 F.2d 653, 169 Ct.Cl. 6 (January 1965), cert. denied, Oct. 11, 1965, 86 S.Ct. 147.

Plaintiff is not entitled to recover. His partial motion for summary judgment is denied and the defendant's counter motion for judgment is granted. The petition is dismissed.

---

4. Plaintiff also complains that the Personnel Officer signed the charges, then passed upon the answer, and ultimately dismissed plaintiff. There is no bar in Section 14 of the Veterans' Preference Act, 5 U.S.C. § 863, or in the Constitution, to this procedure. See Studemeyer v. Macy, 116 U.S.App.D.C. 120, 321 F.2d 386, 388 (1963). It is not unusual for the official with power of removal to sign the charges.