**Dennis HOWARD, Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRA-TION; National Transportation Safety Board, Respondents.**

No. 91–70735.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 1993.

Decided March 1, 1994.

J. Scott Hamilton, Louisville, Colorado, for petitioner.

Kathleen A. Yodice, Federal Aviation Administration, Washington, D.C., for respondents.

Before: FERGUSON, CANBY and BRUNETTI, Circuit Judges.

## OPINION

BRUNETTI, Circuit Judge:

Petitioner Dennis F. Howard ("Petitioner") seeks review of the order of the National Transportation Safety Board (NTSB) affirming the decision of the Administrative Law

Judge (ALJ), which affirmed and modified the FAA administrator's decision temporarily suspending Howard's commercial pilot certificate. We have jurisdiction under 49 U.S.C.App. § 1486(a) (1988), and we deny the petition for review.

*Facts and Proceedings Below*

On March 23, 1987, Petitioner landed a Bell B206 helicopter at Dubois–Jefferson county airport in Pennsylvania. The airport was operating under Instrument Flight Rules (IFR) when Petitioner arrived. Instrument Flight Rules prevail when weather conditions make approach via Visual Flight Rules (VFR) unsafe.

Although the IFR beacon was on when Petitioner made his approach,[1] he nevertheless landed under VFR without obtaining a clearance from air traffic control. Both parties agree that Petitioner did not make radio contact with the flight service specialist on duty (Mr. Roger Whitney), although Petitioner claims he attempted to make such contact at least three times but received no response.

The parties do not dispute that the Dubois–Jefferson airport lies within a 24–hour control zone. Further, Mr. Whitney's periodic weather reports taken before and after the landing recorded his observation of the conditions as 2½ miles visibility with fog and an estimated ceiling of 700 feet (25 minutes before the landing) to 800 feet (35 minutes after the landing). Petitioner disputed Mr. Whitney's assessment of the conditions, recalling that during his flight he encountered "good VFR weather, three miles, a thousand feet, at least."

In connection with this landing, Petitioner was charged with violating three Federal Aviation Regulations (FAR): section 91.-105(c),[2] in that he operated an aircraft, under VFR, within a control zone beneath the ceiling when the ceiling was less than 1000 feet; section 91.105(d)(1),[3] in that he landed an aircraft, or entered the traffic pattern of an airport, under VFR, within a control zone

when the ground visibility was not at least three statute miles; and section 91.9, in that he operated an aircraft in a careless or reckless manner endangering the life or property of others.[4]

Petitioner appealed the administrator's 60–day suspension order to the NTSB. After a hearing, the ALJ found that Petitioner had violated sections 91.105(c), 91.015(d)(1), and 91.9, but modified the suspension period from 60 days to 40 days. Petitioner appealed the ALJ's decision to the full Board, which affirmed the ALJ's decision and 40–day suspension. He then filed a petition for reconsideration of the Board's order, which petition was denied.

Petitioner is now before this court on his petition for review of the decision of the NTSB.

*Standard of Review*

■ Our review of an order of the NTSB "shall be conducted in accordance with the provisions of chapter 7 of title 5," (the Administrative Procedure Act (APA)). 49 U.S.C.App. § 1903(d) (1988). Under the APA, a reviewing court "shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988). The Board's factual findings, however, are conclusive if supported by "substantial evidence" in the record. 49 U.S.C.App. § 1486(e) (1988); *Essery v. Department of Transportation*, 857 F.2d 1286, 1288 (9th Cir. 1988). Purely legal questions are reviewed de novo. *Janka v. Department of Transportation*, 925 F.2d 1147, 1149 (9th Cir.1991).

*Discussion*

I.

Petitioner first argues that the Board's ruling can be set aside because its factual findings are not supported by "substantial

---

**1.** Petitioner admitted seeing the IFR rotating beacon when he was "just about on final approach."

**2.** 14 C.F.R. § 91.105(c) (1987), subsequently renumbered 14 C.F.R. § 91.155(c) (1990).

**3.** 14 C.F.R. § 91.105(d)(1) (1987), subsequently renumbered 14 C.F.R. § 91.155(d)(1) (1990).

**4.** 14 C.F.R. § 91.9 (1987), subsequently renumbered 14 C.F.R. § 91.13(a).

evidence" of record. Petitioner asserts two challenges to the Board's findings in this appeal. First, with respect to the violation of section 91.105(c), he disputes that the flight ceiling was less than 1000 feet at the time of his landing. Second, Petitioner challenges the determination that ground visibility at the airport was reported to be less than three statute miles at that time, for purposes of section 91.105(d)(1).

■ A review for "substantial evidence" is one undertaken with some deference. Under this standard, a finding will not be disturbed if supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *California v. F.E.R.C.*, 966 F.2d 1541, 1551 (9th Cir.1992). The evidence before the Board easily meets this standard.

### A. Flight Ceiling

■ We cannot reach Petitioner's first argument because he did not raise the claim below. Under the code, "No objection to an order of the Board or Secretary of Transportation shall be considered by the court unless such objection shall have been urged before the Board or Secretary of Transportation or, if it was not so urged, unless there were reasonable grounds for failure to do so." 49 U.S.C.App. § 1486(e). In the proceeding appealed from, Petitioner did not challenge the evidence presented to establish that flight conditions were below 1000 feet/three miles.[5] Neither does he offer any grounds for failure to propound this argument before the Board. Because Petitioner failed either to raise this issue in the NTSB proceeding or to justify that forbearance, he has defaulted on this argument, and we are deprived of jurisdic-

tion to address this claim. *See Reid v. Engen*, 765 F.2d 1457, 1462 (9th Cir.1985).

### B. Reported Visibility

■ Petitioner also argues that substantial evidence does not support the Board's finding "that ground visibility at the airport was *reported* to be less than three statute miles" at the time of his landing, under section 91.105(d). (Petitioner's emphasis).[6] Petitioner's claim turns not on what the official visibility actually was, but rather on whether that figure was "reported." Petitioner claims the visibility was not "reported" as it was not shown by substantial evidence that it was communicated to anyone. Because the ground visibility was "not reported," he continues, section 91.105(d)(2) controls, and makes "flight visibility," rather than "ground visibility" the relevant factor.[7] This argument fails, for two reasons.

First, as recognized by the Board, Petitioner distorts section 91.105(d)'s reference to "reported ground visibility" beyond recognition. Without citation to any authority, Petitioner argues that the periodic weather observations made and recorded by the Flight Service Specialist are not "reported"—and therefore 14 C.F.R. § 91.105(d)(1) is without effect—until those observations are actually communicated to someone.

As the Board noted, "[t]here is no support in logic or Board precedent for the [Petitioner's] suggestion that the probative value of the official airport weather is somehow dependent on whether it has been transmitted in some manner to a pilot." Indeed, the Board regularly looks to the airport watchman's log to ascertain the weather conditions supporting a violation of FAR provisions.

---

5. The Opinion and Order of the NTSB expressly noted this failure. "In his brief on appeal respondent does not challenge the evidence the Administrator presented at the hearing to establish that the ceiling was 700 feet and the visibility was 2½ miles when he, while operating under Visual Flight Rules, landed a Bell B206 helicopter within a control zone at the Dubois–Jefferson county airport on May 23, 1987." Opinion and Order No. EA–3157 (July 17, 1990) at 2.

6. Petitioner did raise this claim below.

7. 14 C.F.R. § 91.105(d) provides:

except as provided in Section 91.157, no person may take off or land an aircraft, or enter the traffic pattern of an airport, under VFR, within a control zone—

(1) unless ground visibility at that airport is at least 3 statute miles; or

(2) if ground visibility is not reported at that airport, unless flight visibility during the landing or takeoff, or while operating in the traffic pattern, is at least 3 statute miles.

*See, e.g., Administrator v. Bradway,* 1 N.T.S.B. 145, 1967 WL 6262, at *6 (Dec. 29, 1967).

The proper inquiry is whether the information that the ground visibility was below VFR minimums was existent and available to Petitioner when he made his approach. Substantial evidence exists in the record that it was, through the weather information network, via the rotating airport beacon, and through radio contact with the tower.[8]

Petitioner's argument on this ground also fails for a second reason. Even were we to accept the argument that no reported ground visibility obtains absent a "communication," there exists sufficient evidence in the record to support a finding that the ground visibility was "reported" even under that definition. Before the ALJ, Whitney testified that he put the completed weather observation forms "on to the teletype." This testimony would be sufficient to support a reasonable mind in concluding that the reports were actually communicated. Therefore, even if actual communication were required, the Board's decision should nonetheless stand.

## II.

Petitioner next argues that the NTSB's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in light of "conflicting board precedent." Petitioner did not raise this issue in his hearing before the ALJ or in his appeal of that decision to the full Board. This argument first appears in the Petition for Reconsideration and Modification of the Board's order. Because failure to raise an issue below is jurisdictional in the face of an express provision such as § 1486(e), *see Reid,* 765 F.2d at 1462, we must first decide whether Petitioner has defaulted on this argument by failing timely to press it before the Board.

In *Monahan v. United States,* 354 F.2d 306 (Ct.Cl.1965), the U.S. Court of Claims held in an analogous setting before the Civil Service Commission that the petitioner did adequately exhaust his administrative reme-

dies, even though his principal argument was raised for the first time in his "petition to the Commissioners to reopen and reconsider the decisions of the lower echelons." *Id.* at 308. Exhaustion was satisfied, concluded the court, since the Commissioners appeared to have passed upon the merits of the new claim.

So too is the case here. In its Order Denying Reconsideration of May 31, 1991, the Board discussed and rejected on the merits Petitioner's complaint that *Administrator v. Gaub,* 5 N.T.S.B. 1653, 1986 WL 82385 (Dec. 17, 1986), is inconsistent with *Administrator v. Schoenbachler,* 1 N.T.S.B. 682, 1969 WL 8288 (Dec. 18, 1969). Because the Agency did pass on the merits of this claim, the purposes behind the exhaustion requirement have been satisfied. We therefore proceed to the merits.

Petitioner complains that "[T]he agency's interpretations of Federal Aviation Regulations 14 C.F.R. Sections 91.105(c) and (d) are arbitrary and capricious." This argument appears to be grounded in part in a misunderstanding of the role of this court in reviewing agency action. We do not have plenary power to oversee the actions of the Board. Congress' grant of jurisdiction in § 1486 conveys only the power to "affirm, modify, or set aside *the order complained of.*" 49 U.S.C.App. § 1486(d) (1988) (emphasis added). This court could not act in any event to remedy even a blatant "abuse of discretion" by the Board in a case apart from and prior to the instant proceedings.

At most, Petitioner's claim on this ground can be treated as a charge that the Board erred in denying the motion to reconsider because the Board's order in this case conflicts with valid Board precedent, as embodied in *Gaub,* 5 N.T.S.B. 1653, 1986 WL 82385. This argument fails.

*Administrator v. Schoenbachler* established the general proposition that officially reported weather observations prevail over a

---

8. The ALJ and the Board apparently discounted Petitioner's testimony that he thrice attempted to contact the tower. That testimony carries no greater weight on appeal. *See Hill v. NTSB,* 886 F.2d 1275, 1278 (10th Cir.1989) (not function of Court of Appeals on review to weigh evidence or evaluate credibility of witnesses).

pilot's own assessment of the conditions. 1 N.T.S.B. 682, 1969 WL 8288, at *2–3. Contrary to Petitioner's assertion, the Board in *Gaub* did not contradict that general assertion. The Board in *Gaub* disagreed with the absolute statement that "a pilot cannot substitute his judgment of weather conditions for that of officially reported weather." 5 N.T.S.B. 1653, 1986 WL 82835, at *3. Thus, *Gaub* announced only a limited exception to the general rule in *Schoenbachler;* it did not overturn it.

The Board recognized this in its decision below. *Busey v. Howard,* N.T.S.B. Order No. EA–3328, 1991 WL 320151 (May 31, 1991). The Board noted the following in its Order Denying Reconsideration:

> *Administrator v. Gaub,* NTSB Order No. EA–2451 (1986) did not overrule *Administrator v. Schoenbachler,* 1 NTSB 682 [, 1969 WL 8288] (1969), a case relied on in this proceeding for the general proposition that officially reported airport weather "is deemed controlling over a pilot's assessment of ceiling and visibility" (Order EA–3157 at 2–3). Rather, *Gaub* recognized that, in some narrow circumstances, such as where reported observations are "stale" because of rapidly changing conditions, an exception to the *Schoenbachler* rule may be required in the interest of safe operation.

*Id.* at n. 1.

Board precedent recognizes the reality that changing weather conditions may create situations in which a pilot may properly substitute his more cautious judgment of the prevailing weather conditions. *See Gaub,* 5 N.T.S.B. 1563; *Busey v. Witham,* N.T.S.B. Order No. EA–3282, 1991 WL 320165, at *3 (Apr. 2, 1991). A pilot must be allowed this latitude. The logic behind the rule is that a pilot must be permitted to act with additional caution when the conditions he is actually encountering demand it.

Petitioner has made no showing that his was such a circumstance. Nor could he. He did not substitute his judgment that prevailing conditions were more dangerous, and required more safety precautions, than those officially reported. He was cited precisely because he was operating the craft in an *unsafe* manner, in apparent ignorance of the official conditions.

This case is similar to *Busey v. Witham,* N.T.S.B. Order No. EA–3282, 1991 WL 321065 (Apr. 2, 1991). In *Busey,* official surface observations made before and after the incident related that the ceiling was lower than the 1000 foot minimum. *Id.* 1991 WL 321065 at *3. These observations, as part of the official weather reports, were unimpeached, and "ruled out" the pilot's assertion that the ceiling was in fact higher than 1000 feet.

Petitioner has offered nothing to indicate the official reports in this case were inapplicable because the reports were stale and conditions had changed for the worse. Rather, he relies solely on the existence of what he mistakenly classifies as "conflicting" authority in his attempt to invalidate the Board's reliance on that authority in his case. We find that the Board did not abuse its discretion in applying existing Board precedent, and Petitioner's argument on this ground is without merit.

### III.

▪ Petitioner next argues that Federal Aviation Regulations 14 C.F.R. §§ 91.105(c) and 91.105(d)(1) are unconstitutionally void for vagueness. Petitioner did not press this argument in the Administrative proceedings either. Challenges to the constitutionality of an agency regulation, however, lie outside the cognizance of that agency. See *Watson v. NTSB,* 513 F.2d 1081, 1082 (9th Cir.1975) (per curiam). Such claims therefore need not be exhausted. *Id.; Reid v. Engen,* 765 F.2d at 1461.

Petitioner concedes that sections 91.105(c) and (d) are clear on their face. There is no need, therefore, to undertake a traditional vagueness analysis as to the text of these sections under *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

▪ Petitioner recognizes that "[p]otential vagueness may be mitigated by judicial or executive interpretation of the challenged provision." *Go Leasing, Inc. v. NTSB,* 800 F.2d 1514, 1525 (9th Cir.1986) (citations omitted). Then, without argument, reasoning, or citation to authority, he concludes that the

otherwise valid regulations have been rendered vague by subsequent NTSB decisions. We are unconvinced. Petitioner has not supplied any authority for the proposition that a decision interpreting a statutory or regulatory provision could have the effect of rendering the underlying provision unconstitutionally vague. We decline to announce such a rule today.

## IV.

Finally, Petitioner asserts that the NTSB's decisions constitute an invalid attempt to circumvent the rulemaking provisions of the APA. We again cannot reach this issue, which is raised for the first time in the reply brief,[9] because Petitioner never raised it in the administrative proceedings. For failure to raise the issue below, we are without jurisdiction to consider this claim. *Reid*, 765 F.2d at 1462.

*Conclusion*

For the foregoing reasons, we deny the petition for review of the order of the NTSB, affirming the 40–day administrative suspension of Petitioner's pilot certificate.

PETITION DENIED.

---

9. The issue would therefore be waived in any event. *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2310, 119 L.Ed.2d 230 (1992).