**John Edward WAGNER, Petitioner,**

v.

**NATIONAL TRANSPORTATION SAFETY BOARD; Federal Aviation Administration, Respondents.**

No. 94–70121.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 1995.

Decided June 19, 1996.

Edwin R. Collins, Harris & Reedhead, San Diego, California, for petitioner.

Edmund J. Averman, III, Federal Aviation Administration, Washington, D.C., for respondents.

Before: BOOCHEVER, T.G. NELSON and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

Mr. Wagner petitions for review of a National Transportation Safety Board (NTSB) decision suspending his pilot's certificate for ninety days. The main issue is whether a flight can be a "demonstration flight" under Part 91 of the FAA regulations, when a person flying the airplane is considering the purchase, but the paying customer does not know that it is a demonstration flight on which it does not enjoy all the protections of Part 135. We agree with the NTSB that the answer is no.

## FACTS

Sun World International regularly used Desert Airlines to fly its executives from one place to another. Mr. Wagner regularly acted as pilot, usually flying a type of airplane called a Beechcraft King Air. The evening before one such flight, the King Air had mechanical problems. A man named Frost was interested in selling a Learjet, and offered it to Desert Airlines for a free demonstration flight. Mr. Wagner had formerly been certified to fly Learjets, but had let his certification lapse because he was not flying them regularly. He had some interest in buying a Learjet. Mr. Frost, Desert, and Mr. Wagner arranged that the Learjet would be used as a substitute for the King Air, and that this would be a free demonstration flight. Mr. Wagner would fly as copilot.

Executives from Sun World had plans to travel on Desert Airlines the evening that Frost, Desert, and Mr. Wagner made the arrangements for the demonstration flight. Neither Sun World president Mr. Rinella nor the Sun World employee responsible for booking the flight knew anything about these arrangements. They thought they were chartering a commercial air taxi flight as usual. When Mr. Rinella got to the airport and saw the Learjet, he expressed surprise, and said he did not need a jet for the short flight. Mr. Yskamp, the head of Desert Airlines, and Mr. Wagner were there, but did not tell Mr. Rinella that this was a free demonstration flight to look over the Learjet. Instead, Mr. Rinella was told that he would be charged the same rate he usually paid for the King Air, because the King Air was not available:

> Well, I heard at that time that the King Air was not available, this plane was being substituted but that the-not to be alarmed because the rate on the airplane would be identical to that for the King Air and that Desert Air was absorbing the difference.
>
> . . . .
>
> I had no knowledge of the demonstration flight.

Subsequently, Desert Airlines sent Sun World an invoice for the flight. Mr. Rinella initially refused to pay it, because it did not have a date, and it listed the King Air aircraft instead of the Learjet. After Desert satisfied him that the amount was the same as he would have paid for the King Air, he authorized payment on the invoice to Desert Airlines. A copy of the invoice was not furnished to Mr. Wagner's counsel until the day before his hearing, although he had been advised that there was such an invoice. The evidence established without contradiction that neither Mr. Wagner nor Mr. Frost, the owner of the Learjet, charged or was paid for the flight. There is no explanation in the record of whether the FAA disciplined Desert Airlines, which arranged the flight with the passengers and billed them for it, or just Mr. Wagner, the unpaid copilot.

All of the facts cited above were supported by substantial evidence on the record as a whole, and none of them was contradicted. Thus, as far as the prospective seller of the Learjet was concerned, this was a demonstration flight at no charge so that Mr. Wagner could evaluate the plane for possible purchase, and determine whether his frequent customers would like it. But as far as Mr. Rinella and the Sun World employee who booked the flight knew, this was a commercial flight for which they would be billed. They knew nothing about its being a free test flight to demonstrate the airplane. Desert Airlines seems to have been of two minds, operating a free test flight so far as Mr. Frost, the Learjet's owner, and Mr. Wagner, the copilot and prospective purchaser, were concerned, but an ordinary commercial flight for hire with respect to its customer, Sun World International.

## ANALYSIS

■ This is an Administrative Procedure Act review of a petition, so we "shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Howard v. FAA,* 17 F.3d 1213 (9th Cir.1994). Purely legal questions are reviewed *de novo. Howard,* 17 F.3d at 1215.

### I. The FAA's Discovery Violation.

■ The Administrative Law Judge had required exchange of all exhibits fifteen days before trial. The attorney for the FAA did not obtain Desert Airlines' invoice to Sun World until a week before trial, Monday, March 16. A week earlier, she had told Mr. Wagner's lawyer that among the exhibits would be a copy of the invoice, but he did not fully understand what she was talking about, because he did not realize that Desert Airlines had sent an invoice. She told him that she would send it to him immediately as soon as she received it. She had the attorney's fax number.

The FAA's lawyer got the invoice in the late afternoon on Monday, March 16. She did not send it to Mr. Wagner's lawyer that afternoon. She was out of the office and did not have it sent Tuesday or Wednesday.

She was back in the office Thursday, but did not cause the invoice to go out that day either. Instead, she sent it ordinary mail (not fax) on Friday, March 20. It got to Mr. Wagner's lawyer Monday, the day before the Tuesday hearing. Mr. Wagner objected to its admission as evidence, but the Administrative Law Judge let it in anyway. Mr. Wagner, however, did not seek a continuance to rebut the evidence. Mr. Wagner argues that admitting the invoice was arbitrary and capricious.

There appears to have been no good reason why the FAA's attorney could not have subpoenaed the invoice in plenty of time to produce it as required by the deadline in the prehearing order. Nor was there any apparent excuse for not faxing it to Mr. Wagner's lawyer during the week before the hearing, when she had it and he did not. As the case would look to the attorneys the week before the hearing, the invoice would likely be important, because it would prove that the flight had been for a charge, not for free.

But as the evidence came out at the hearing, and as the FAA decided the case, the invoice did not matter. We therefore need not decide whether the invoice was wrongly admitted. As we explain below, the outcome was controlled by the customers' ignorance of whether this was a demonstration flight, and its expectation that it would be charged, regardless of whether a charge was actually made. Error in admission of the invoice could not, as this case ultimately was decided, have prejudiced Mr. Wagner, so we need not decide whether there was error. *See Janka v. Department of Transportation,* 925 F.2d 1147, 1152 (9th Cir.1991).

II. Part 91.

Part 135 of the FAA regulations generally provide regulatory safeguards for air taxi passengers. 14 C.F.R. § 135.1. Part 91 provides more liberal operating rules for various kinds of flights, such as ferry or training flights, aerial survey work, free demonstrations of airplanes to prospective customers, and use by a company of its own airplane.

14 C.F.R. § 91.501. Mr. Wagner was certified to fly the Learjet under Part 91, but not under Part 135. The applicable subsection upon which he relies is for demonstration flights:

> Flights for the demonstration of an airplane to prospective customers when no charge is made except for those specified in paragraph (d) of this section.

14 C.F.R. § 91.501(b)(3). Subsection (d) is an exception for certain passed on expenses, e.g., fuel and landing fees, 14 C.F.R. § 901(d), and no party claims that it applies to this case.

■ Mr. Wagner argues that the quoted exception applies, because he worked with Desert Airlines as an independent contractor, and the Sun World passengers were his regular customers and not just Desert Airlines'. The owner of the Learjet did not charge and neither did he.

We agree with the NTSB that the regulation must be applied based upon what the customers knew when its executives boarded the plane, not upon arrangements unknown to it between the owner and prospective purchaser of the airplane. The regulatory scheme is designed to assure the safety of air taxi passengers. A secondary purpose is to facilitate air commerce, by encouraging people to fly on airplanes secure in the knowledge that air commerce is heavily regulated to protect their safety. If a customer's executives are flying on a free demonstration flight to look over an aircraft for possible purchase, without all the Part 135 safeguards in place, the customer is entitled to know it.

■ The critical fact in the case at bar is that neither Sun World president Mr. Rinella nor the employee who booked the flight knew they were involved in a demonstration flight. Unless all customers making travel arrangements on a flight know that they are dealing with a demonstration of an airplane for which no charge will be made to some prospective purchaser of the aircraft, this Part 91 exception to Part 135 cannot apply.[1]

---

1. We need not decide how the regulation should be construed in circumstances where there is a significant distinction between "customers," the

term in the regulation, and passengers. If Desert Airlines had told Sun World that the flight would be a free demonstration flight, but the Sun World

We need not decide whether Mr. Wagner could have avoided discipline, had the evidence demonstrated that he reasonably believed that Sun World knew that this was a free demonstration flight. No evidence contradicted Mr. Rinella's testimony that when he asked about the Learjet, with Mr. Wagner standing there and talking to him, he "heard at that time that the King Air was not available, this plane was being substituted but that the-not to be alarmed because the rate on the airplane would be identical to that for the King Air and that Desert Air was absorbing the difference." Mr. Wagner testified, but did not deny that this discussion had taken place or that he had said or heard the remark.

So far as Sun World knew, this was an ordinary commercial flight, of the type regulated by Part 135. Mr. Rinella and the employee who booked the flight might never have heard of Part 135, but they could assume that the usual regulatory scheme for commercial airplane flights was in place and protecting the passengers' safety. The company was to be charged, and it paid for the flight. Section 91.501(b)(3) requires that no charge be made for a demonstration flight. It is not a "no charge" flight if the customer is to pay for their carriage, whether or not the airline is to pay the aircraft's owner. Indeed when Mr. Rinella raised the question of why they were flying on a Learjet, he was told that his company would be charged the same rate as for a King Air.

Looking to the customers' reasonable expectation to determine the nature of the flight is consistent with NTSB precedent. *See Administrator v. Southeast Air, Inc.,* 4 NTSB 517, 519 (1982); *Administrator v. Cunningham,* 5 NTSB 516, 519 (1985). It makes obvious sense.

PETITION DENIED.

employees who were passengers did not know that, so the passengers thought they were boarding an ordinary commercial flight, that might or might not be a distinguishable case. Likewise, if the "prospective customers" for an aircraft were to be passive investors buying the plane for lease to an air taxi service, and the fully informed

passengers for the demonstration flight were the air taxi personnel who would use the plane but would not be the seller's "prospective customers," we do not intimate unavailability of 14 C.F.R. § 91.501(b)(3). These questions are left for a case raising them.