Geraldine KEITH, Plaintiff,

v.

The UNITED STATES RAILROAD
RETIREMENT BOARD, et
al., Defendants.

No. CIV.A. 02–1054(RBW).

United States District Court,
District of Columbia.

Sept. 29, 2003.

Paul A. Mussenden, Esq., U.S. Attorney's Office, Washington, DC, for defendants.

Geraldine Keith, Laurel, MD, pro se.

### MEMORANDUM OPINION

WALTON, District Judge.

This matter comes before the Court upon the defendants' motion to dismiss the plaintiff's complaint ("Defs.' Mot.").[1] The plaintiff, who is proceeding *pro se*, seeks: (1) a declaratory judgment setting aside a settlement agreement that the plaintiff entered into with her former employer, defendant United States Railroad Retirement Board ("the Board"), or, in the alternative, an order remanding the case back to the Equal Employment Opportunity Commission ("EEOC"), and (2) relief under District of Columbia common law declaring the settlement agreement void because the plaintiff allegedly lacked the requisite mental capacity to execute the agreement.[2] Complaint ("Compl.") at 1–2, 6–7. The defendants assert that due to the plaintiff's failure to exhaust her administrative remedies by failing to timely

raise her mental capacity claim with the EEOC, her complaint should be dismissed. Upon consideration of the parties' submissions and for the reasons set forth below, the Court must deny the defendants' motion to dismiss because the Court is unable to conclude that as a matter of law the plaintiff has failed to exhaust her administrative remedies.

### I. *Factual Background*

On March 5, 1996, the plaintiff was involved in a verbal altercation with her supervisor, Michael McCool. Defs.' Mot., Memorandum of Points and Authorities in Support of Motion to Dismiss ("Defs.' Mem.") at 1. Following this incident, the plaintiff filed an administrative claim with the Board's Office of Equal Opportunity ("OEO"), alleging "Sexual Harassment under Title VII[ ], a violation of [her] Civil Rights, and a denial of [her] Equal Employment Opportunity." *Id.* at 2 (citing Exhibit ("Ex.") 1 (OEO Complaint dated March 7, 1996) at 2). On April 1, 1996, the plaintiff's supervisor issued a memorandum entitled Apology for Using Inappropriate Language, in which he stated: "I wish to apologize to you for using some 'curse' words during a heated conversation regarding sick leave, which occurred on March 1, 1996. This was inappropriate and I'll make an effort to refrain from using any 'curse' words in our future conversations." *Id.*, Ex. 2 (Memorandum from Michael T. McCool to Gerri Keith dated April 1, 1996). On April 17, 1996, the plaintiff entered into an informal settlement agreement with the Board, in

---

**1.** Because of the plaintiff's status as a *pro se* litigant, this Court issued an Order on August 28, 2003, as required by *Fox v. Strickland,* 837 F.2d 507 (D.C.Cir.1988), wherein the plaintiff was notified of the potential consequences of failing to fully and completely respond to the defendants' dismissal motion. On September 22, 2003, the plaintiff filed a Surrebuttal Memorandum of Points and Authorities in

Opposition to the Defendants' Motion to Dismiss.

**2.** In addition to the Board, the plaintiff has also named Cheryl T. Thomas, in her capacity as Chairperson of the Board, and Jerome M. Kever, in his capacity as a member of the Board, as defendants.

which her supervisor "agreed to provide [her] with a letter of apology for using profanity in the course of the confrontation that occurred on March 5, 1996. [The agreement also stated that t]he letter will [ ] include an assurance that outbursts such as the one which occurred on March 5 will not happen again." [3] *Id.* at 2–3 (citing Ex. 3 (The Board's Notice of Final Interview and Informal Resolution dated April 4, 1996)). This notice of informal resolution also provided the plaintiff the following appeal options "if she believed the Agency failed to comply with the terms of the settlement agreement":

(1) request enforcement of the settlement agreement within 30 days of any alleged violation occurring after plaintiff accepted the terms of the settlement;

(2) within 30 days of plaintiff's acceptance of the settlement, request that her informal complaint be reinstated for further processing; or

(3) within 15 days of plaintiff's receipt of the notice, file a discrimination complaint with the Board's OEO.

*Id.* at 3 (citing Ex. 3).

The apology submitted by her supervisor did not satisfy the plaintiff and on May 17, 1996, she "appealed to the Board's OEO office to reinstate her informal complaint contending that the Agency breached the agreement because she believed that [her supervisor's] written apology did not comply with its terms." *Id.* at 4 (citing Ex. 4 (Notice of Breach of Informal Resolution dated May 17, 1996)). Specifically, the plaintiff asserted that the

[l]etter was insufficient, because Mr. McCool's letter represents that he 'used' curse words, yet he had used those curse words directly towards me and had called me a bitch . . . [and she pointed out that] the Informal Resolution states that Mr. McCool will provide a letter which will include 'assurances that outburst[s] as the one which occurred' will not happen again. The [l]etter only states that Mr. McCool will 'make an effort to refrain' from using curse words. Mr. McCool's letter does not make 'assurances' that his behavior will not continue, but only states that he will 'try.'

*Id.*, Ex. 4. On May 22, 1996, the plaintiff's supervisor issued a second written apology, in which he stated:

I apologize for using curse words during or after our conversation of March 1, 1996,[4] regarding sick leave notification and scheduling. My loss of composure was not appropriate.

I hope this will clarify my earlier apology. You are a valuable part of our working-group here. I have always thought so and continue to believe so. I will not use curse words in our future conversations.

*Id.*, Ex. 5 (Letter from Michael McCool to Geraldine Keith dated May 22, 1996). Following the issuance of this second apology letter, the Board's OEO denied the plaintiff's appeal and her request to reinstate her informal complaint on May 29, 1996, because it found that the "new apology letter addresse[d] all the issues [the plaintiff] raised in [her] breach of agreement letter[,]" and informed her that an appeal

---

**3.** The Court notes that although the plaintiff indicated that she agreed to accept the informal resolution contained in the April 4, 1996 letter, she stated beneath her signature that "Mr. McCool's apology did not satisfy nor address the severity of his actions." Defs.' Mem., Ex. 3.

**4.** The Court notes that although Mr. McCool referred to the conversation as occurring on March 1, 1996, instead of March 5, 1996, the October 10, 1997 EEOC decision found this conflict to be inconsequential. *See* Defs.' Mem, Ex. 8 (EEOC Decision dated October 10, 1997).

of the denial must be filed within 30 days of receipt of the denial. *Id.*, Ex. 6 (Board's Letter to Geraldine Keith dated May 29, 1996).

On June 25, 1996, the plaintiff filed a Notice of Appeal with the EEOC. *Id.* at 6, (citing Ex. 7 (Notice of Appeal/Petition to EEOC dated June 20, 1996)). The plaintiff then elected to take "Early Retirement" from the Board on April 1, 1997. *Id.* at 7 (citing Ex. 9 (Letter from Geraldine Keith to EEOC dated January 9, 1998)). On October 10, 1997, the EEOC denied the plaintiff's appeal of the OEO's decision, finding that the Board did not breach the settlement agreement. *Id.* at 7 (citing Ex. 8 (EEOC Decision dated October 10, 1997)). The EEOC noted that the plaintiff was "not arguing on appeal that she did not enter the settlement agreement. Instead, [she was] arguing for specific enforcement of the terms of the settlement agreement." *Id.* The EEOC Decision informed the plaintiff of her appeals rights, stating that she could "(1) move for reconsideration within 30 days of receipt of the decision; or (2) file a civil action in an appropriate U.S. District Court within 90 days from the date she received the decision." *Id.* at 7–8 (citing Ex. 8). It was not until January 9, 1998, when the plaintiff sent a letter to the EEOC seeking reconsideration of its October 10, 1997 decision.[5] *Id.* at 8 (citing Ex. 9). For the first time, the plaintiff stated that she "want[ed] to bring to [the EEOC's] attention [ ] that [she] was mentally and emotionally ill when [she] signed the Informal Resolution on April 17, 1996." *Id.*, Ex. 9. Plaintiff also represent-

ed that "[a]t that time [she] did not have a lawyer, and . . . felt pressured to sign the Informal Resolution." *Id.* As support for her position, the plaintiff enclosed a letter from her psychiatrist, Dr. Julia B. Frank, and asked the EEOC "to vacate the Informal Resolution and allow [her] to file [her] discrimination complaint with the agency at [that] point in time." *Id.*

In response to the plaintiff's motion for reconsideration, "the Board argued that the Plaintiff failed to file her request with the EEOC in a timely manner and that she should be precluded from raising new allegations (mental capacity) that were not previously exhausted during the administrative process." *Id.* at 9. On October 19, 2000, the EEOC denied the plaintiff's request for reconsideration and informed her that she had 90 days from the date of receipt of the decision to seek review in a federal district court. *Id.* (citing Ex. 12 (Denial of Request for Reconsideration ("Denial") dated October 19, 2000)). The EEOC's Certificate of Mailing indicated that a copy of the decision was mailed to the plaintiff, the "plaintiff's representative (if applicable)," and the agency on October 19, 2000. *Id.*, Ex. 12. The Denial also stated that the EEOC would presume that the decision was received within five calendar days after it was mailed. *Id.* The plaintiff did not initiate her action in this Court until May 30, 2002.

## II. *Standards of Review*

### (A) *Rule 12(b)(1)*

 Federal Rule of Civil Procedure 12(b)(1) requires that the plaintiff bear the burden of establishing by a preponderance

---

5. On December 9, 1997, the plaintiff requested an extension of time to file her motion for reconsideration with the EEOC. Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Pl.'s Mem."), Ex. B (Letter from Geraldine Keith to Donald Names dated December 9, 1997). On December 15, 1997, the EEOC granted the motion and authorized the plaintiff to file her motion for reconsideration by January 9, 1998. *Id.*, Ex. E (EEOC Letter from Donald Names to Geraldine Keith dated December 15, 1997).

of the evidence that the court has jurisdiction to entertain his claims. Fed.R.Civ.P. 12(b)(1); *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C.2001) (holding that the court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); *Pitney Bowes, Inc. v. United States Postal Serv.,* 27 F.Supp.2d 15, 18 (D.D.C.1998); *Darden v. United States,* 18 Cl.Ct. 855, 859 (Cl.Ct.1989). While the Court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), because the plaintiff has the burden of proof to establish jurisdiction, the "'plaintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police,* 185 F.Supp.2d at 13–14 (citation omitted). Finally, the Court notes that in deciding a Rule 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint but may consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case. *See EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624–25 n. 3 (D.C.Cir.1997); *Herbert v. Nat'l Acad. of Scis.,* 974 F.2d 192, 197 (D.C.Cir.1992); *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987); *Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir. 1986); *Grand Lodge of Fraternal Order of Police,* 185 F.Supp.2d at 14.

### (B) *Rule 12(b)(6)*

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal,* 16 F.3d at 1276. In deciding whether to dismiss a claim under Rule 12(b)(6), the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice. *E.E.O.C. v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624–25 (D.C.Cir.1997). The Court will dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. Finally, the Court notes that because the plaintiff is a *pro se* litigant, her complaint must be construed liberally. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding that allegations in *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers).

### III. *Legal Analysis*

The issues for resolution in this case involve whether the plaintiff's complaint should be dismissed because of her failure both to exhaust her administrative remedies and to file a complaint within the applicable statute of limitations with this Court. The District of Columbia Circuit has stated that the EEOC has been given "broad authority to enforce [Title VII's] antidiscrimination mandate within the fed-

eral government, including responsibility for issuing regulations to control federal agencies' processing of discrimination complaints." *Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997) (citing 42 U.S.C. § 2000e–16(b)). It is axiomatic that "[c]omplainants must timely exhaust [available] administrative remedies before bringing their claims to court." *Id.* (citing *Brown v. GSA,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Bayer v. United States Dept. of the Treasury,* 956 F.2d 330, 332 (D.C.Cir.1992)); *Cristwell v. Veneman,* 224 F.Supp.2d 54, 57–58 (D.D.C. 2002) (Walton, J.). Individuals "who fail[ ] to comply, to the letter, with administrative deadlines 'ordinarily will be denied a judicial audience.'" *Brown v. Marsh,* 777 F.2d 8, 14 (D.C.Cir.1985) (quoting *Shehadeh v. Chesapeake & Potomac Telephone Co.,* 595 F.2d 711, 727 (D.C.Cir.1978)). Administrative time limits contained in Title VII, as well as statutes of limitations, are not "jurisdictional bars to bringing suit ... but are subject to equitable tolling, estoppel, and waiver." *Marsh,* 777 F.2d at 14 (citations omitted). In this Circuit it is clear that "[b]ecause untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it. If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Bowden,* 106 F.3d at 437 (citations omitted).

In this case, the defendants assert that the case should be dismissed because the plaintiff failed

> to timely raise her mental capacity claim before the Agency and EEOC as a basis for relief, ... to timely seek reconsideration of the EEOC's 10/10/97 decision affirming the Agency's denial of her request to undo the settlement agreement, *and* ... to file the present complaint

within 90 days of the EEOC's 10/19/00 Final Agency Decision.

Reply in Further Support of Defendant[ ]s['] Motion to Dismiss ("Reply") at 4 (emphasis in the original). The Court will address each argument separately.

### (A) *Was the Plaintiff's Motion for Reconsideration of the EEOC's Decision Timely?*

It is undisputed that when the EEOC issued its original decision on October 10, 1997, it informed the plaintiff that if she wanted to file a motion for reconsideration, she would have to do so within thirty days of receipt of the decision. *See* Defs.' Mem., Ex. 8. And, it is also undisputed that the plaintiff did not send her motion for reconsideration to the EEOC until January 9, 1998. *See* Defs.' Mem., Ex. 8. Accordingly, the defendants assert that the plaintiff's motion was untimely.

However, the plaintiff states in a declaration she submitted with her opposition to the defendants' dismissal motion that she sent a handwritten request to the EEOC on December 9, 1997, requesting an extension of time to file a motion for reconsideration, a copy of which she has attached to her opposition. *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Pl.'s Mem."), Ex. 1 at 2 (Plaintiff's Declaration); Ex. B (Letter from Geraldine Keith to Donald Names dated December 9, 1997). The plaintiff also states that she received a letter from the EEOC, dated December 12, 1997, which she has also attached to her opposition, that acknowledged receipt of her December 9, 1997 request. *See* Pl.'s Mem., Ex. 1 at 2, Ex. D (EEOC Request for Reconsideration dated December 12, 1997). Finally, and of particular significance, the plaintiff states in her declaration that she received a letter from the EEOC dated December 15, 1997, which is likewise attached to her opposi-

tion, granting her an extension of time until January 9, 1998, to file her motion for reconsideration.[6] *See* Pl.'s Mem., Ex. 1 at 3, Ex. E.

■ The defendant argued before the EEOC that the plaintiff's motion for reconsideration should not be considered because it was filed untimely, as it was due thirty days after receipt of the EEOC's October 10, 1997 decision and the plaintiff did not file her initial request until December 9, 1997, almost two months after the decision was issued. Reply, Ex. 1 (Agency Response to Plaintiff's Motion for Reconsideration). However, in denying the plaintiff's motion, the EEOC clearly considered the merits of the plaintiff's request, as it stated that "[a]fter a review of the complainant's request for reconsideration, the previous decision, and the entire record ... it is the decision of the Commission to deny the request." Defs.' Mem., Ex. 12. Thus, it appears to the Court that the EEOC did not consider the plaintiff's motion for reconsideration as having been untimely filed and the plaintiff therefore did not fail to exhaust her administrative remedies by failing to timely request reconsideration of the EEOC decision. *Accord Howard v. FAA,* 17 F.3d 1213 (9th Cir.1994) (finding that exhaustion of administrative remedies is satisfied when agency considers merits of plaintiff's request).

**(B)** *Did the Plaintiff Timely File Her Complaint in this Court?*

As this Court stated above, the EEOC issued its Denial of Request for Reconsideration on October 19, 2000, and indicated that the plaintiff had ninety days from the receipt of the Denial to file a complaint in federal court. The plaintiff did not file her complaint with this Court until May 30,

2002, approximately one year and seven months after the EEOC issued its final decision. The plaintiff states in her declaration that from the time she filed her motion for reconsideration on January 9, 1998, through the early part of 1999, she called the EEOC every two weeks to inquire about the status of her motion for reconsideration. Pl.'s Mem., Ex. 1 at 3. The plaintiff further states that on August 9, 1999, she moved from Forest Heights, Maryland to Laurel, Maryland, and that she spoke to a staff person at the EEOC named "Pat" on August 23, 1999, and informed the employee of her new address. *Id.* The employee allegedly told the plaintiff that she would indicate her new address in her records. *Id.* The plaintiff also represents that this EEOC staff person told her to send a letter to the EEOC advising it of her new address. *Id.* The following day, the plaintiff states that she sent a letter to the EEOC that was addressed to "Pat,", which she attached to her opposition, wherein she informed the EEOC of her new address. *See* Pl.'s Mem., Ex. 1 at 3, Ex. F (Letter from Geraldine Keith to "Pat" dated August 24, 1999). And the plaintiff states that she continued to contact the EEOC periodically following her relocation to Laurel about the status of her motion for reconsideration and was told by the EEOC staff that her motion was on the hearing examiner's desk pending a decision. *See* Pl.'s Mem., Ex. 1 at 4. Beginning in either December 1999 or January 2000, EEOC staff informed the plaintiff that no decision had been made on her motion and that she would be notified by certified mail when a decision was reached. *Id.* Following this communication, the plaintiff states that she continued to call the EEOC periodically "throughout 2000, but less frequently than

---

**6.** The Court is troubled that counsel for the government failed to even reference these

EEOC documents in the papers that he filed with this Court.

before[,]" and that during 2001, she called approximately every two to three months and was told that no decision had been made. *Id.* However, in February 2002, the defendant states that she "was informed that a decision had been made on October 19, 2000 and it had been sent to [her] old address in Forest Heights, Maryland." *Id.* The plaintiff states that she "thought it was outrageous that [her] August, 1999 change of address letter had not been processed" and on February 15, 2002, she hand delivered another change of address form to the EEOC. *Id.* at 5. It was not until "on or about March 7, 2002," that the plaintiff states she ultimately received a copy of the EEOC's decision, and that she filed this lawsuit within 90 days thereafter. *Id.*

As support for their position that the plaintiff failed to timely initiate this court action, the defendants rely on the fact that the "EEOC has no record of receiving a change of address from plaintiff until February 15, 2002." Reply at 9 (citing Ex. 2 (Affidavit of Robert J. Barnhart, Director, Compliance and Control Division, in the Office of Federal Operations, EEOC)). In addition, the defendants note that the plaintiff indicated that she was represented by counsel on her motion for reconsideration, that she failed to produce any evidence that her attorney had advised the EEOC that he/she no longer represented the plaintiff, and EEOC regulations state that a "[p]laintiff is deemed on notice [of agency action] from the date her legal counsel receives the final decision rendered by EEOC." *Id.* at 10 (citing 29 C.F.R. § 1614).

In *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363 (D.C.Cir.1998), the District of Columbia Circuit explained that "equitable tolling allows a plaintiff to avoid the bar of the limitations period if despite all due diligence [the plaintiff] is unable to obtain vital information bearing on the existence of [the plaintiff's] claims." *Id.* at 1367 (citing *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C.Cir.1998)). For the principle of equitable tolling to apply the plaintiff's excuse must be more than "a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The "court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988).

■ Here, the record before the Court demonstrates that the plaintiff diligently pursued her claim. In her declaration, the plaintiff indicates that she consistently contacted the EEOC to check on the status of her motion for reconsideration, was given incorrect information about the status of the motion by EEOC staff, and has provided documentary evidence demonstrating that she informed the EEOC on several occasions that her address had changed. Despite her efforts to keep herself abreast of the status of her case, when a decision in her case was eventually made, notice of the decision was sent to her old address. The defendants place great emphasis on its position that although the plaintiff's copy of the decision was sent to the plaintiff's old address, one was also sent to her attorney. However, the Court is unable to conclusively agree that a copy was sent to plaintiff's attorney. This is because the Certificate of Mailing of the EEOC's Denial does not definitely state that it was sent to the plaintiff's designated attorney. Rather, it merely states: "For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's

representative (if applicable), and the agency on: OCT 19 2000 R Byrd, Equal Opportunity Assistant." Defs.' Mem., Ex. 12. And, the Denial does not indicate the name and address of the attorney to whom it was purportedly sent. Therefore, because the plaintiff initiated this lawsuit within 90 days after receiving a copy of the EEOC's decision, the Court is unable to conclude as a matter of law that equitable tolling of the statute of limitations is not applicable in this case. Accordingly, dismissal on Rule 12(b)(1) or Rule 12(b)(6) grounds for failure to timely file this lawsuit is not warranted.

### (C) *Did the Plaintiff Timely Raise Her Mental Capacity Claim Before the Board and the EEOC?*

 The defendants assert that the plaintiff failed to timely raise her claim that she lacked the requisite mental capacity to enter into the settlement agreement because it was raised for the first time in the plaintiff's motion for reconsideration. The plaintiff claims that

> [a]t the time that the [she] signed the settlement agreement with the defendants, she lacked the requisite mental capacity to enter a contract because she was suffering from a mental impairment which severely affected her cognitive functioning and judgment. She was not able to understand the consequences of the transaction and make [a] rational judgment concerning it. She did not discover her lack of capacity until sometime around the month of January 1998 through consultations with a psychiatrist at Georgetown University.

Compl. at 5. It is not clear from examining the EEOC's Denial of Request for Reconsideration whether the EEOC considered the plaintiff's mental health claim as having been timely made when it denied the plaintiff's request. *See* Defs.' Mem., Ex.

12. And, this determination by the agency is necessary for this Court to decide whether a plaintiff has exhausted her administrative remedies. This is because in considering whether a plaintiff has exhausted her administrative remedies when a plaintiff raises a new claim in a motion for reconsideration of an agency ruling, courts have looked to whether the agency considered the merits of the petitioner's claims when the motion for reconsideration was decided. For example, in *Howard*, 17 F.3d 1213, following a hearing before an administrative law judge ("ALJ") and the appeal of the ALJ's adverse decision to the National Transportation Safety Board ("NTSB"), the plaintiff raised an issue for the first time in a petition for reconsideration of the NTSB's ruling affirming the ALJ's decision. *Id.* at 1217. The Ninth Circuit concluded that because the NTSB discussed and rejected the merits of the plaintiff's petition for reconsideration, the exhaustion of administrative remedies requirement was satisfied. *Id.* The Ninth Circuit based its reasoning on *Monahan v. United States*, 173 Ct.Cl. 734, 354 F.2d 306 (1965), where the United States Court of Claims found that a petitioner adequately exhausted his administrative remedies "even though his principal argument was raised for the first time in" his petition for reconsideration. *Howard*, 17 F.3d at 1217 (citing *Monahan*, 354 F.2d at 308). The court held that "[e]xhaustion was satisfied ... since the Commissioners appeared to have passed upon the merits of the new claim." *Id.* On the other hand, when an agency denies a motion for reconsideration because a new claim was filed untimely, courts have found that the plaintiff's administrative remedies have not been exhausted. Accordingly, in *Summitt Investigative Serv. v. Herman*, 34 F.Supp.2d 16 (D.D.C.1998), a case similar to this case, in that the plaintiff was not required to seek reconsideration of the agency's decision as

a "condition precedent to seeking judicial review[,]" the plaintiffs raised *for the first time* a new argument in a motion for reconsideration to a decision rendered by the Department of Labor's Administrative Review Board ("ARB"). *Id.* at 25–26. Another member of this Court observed that "[t]he ARB quickly disposed of Summitt's untimely arguments first by noting that Summitt was raising its [ ] claim 'for the first time in its motion to reconsider,' ... and then concluding in the next sentence that '[t]here is absolutely no support for this allegation in the record.' " *Id.* at 26 (first brackets added and second brackets in the original). The district court concluded that the plaintiffs had failed to exhaust their administrative remedies by waiting to raise a claim for the first time until they requested reconsideration of an agency's appellate board ruling. *Id.* Thus, on the record before this Court, it is unable to determine whether the plaintiff failed to exhaust her administrative remedies with respect to her claim that she lacked the requisite mental capacity to enter into the settlement agreement because the EEOC's Denial of Request for Reconsideration does not state whether it considered the merits of this claim. Accordingly, the Court is unable to grant the defendants' motion to dismiss on the ground that the plaintiff failed to exhaust her administrative remedies.

## IV. *Conclusion*

For the aforementioned reasons, this Court will deny the defendants' motion to dismiss. The motion must be denied because it appears that the plaintiff's motion for reconsideration was considered as timely filed by the EEOC and the defendants' challenge to the timeliness of the filing of this action is defeated by the doctrine of equitable tolling. In addition,

the Court is unable to determine whether the plaintiff failed to exhaust her administrative remedies with respect to her claim that she lacked the requisite mental capacity to enter into the settlement agreement because the EEOC's Denial of Request for Reconsideration does not state whether it considered the merits of this claim.[7]

### *ORDER*

Upon consideration of the defendants' motion to dismiss, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby,

**ORDERED** that the defendants' motion to dismiss is **DENIED**.

---

7. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.